UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.G. (a minor) *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SALESFORCE.COM, INC., <br><br> *Defendant*. | Case No. 1:20-CV-2335 |

**REPLY IN SUPPORT OF DEFENDANT SALESFORCE.COM, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I. Introduction

When Congress enacted CDA 230 over 20 years ago, its goal was to preserve the free and open internet, guard against censorship by the threat of litigation, and avoid subjecting internet companies to a patchwork of inconsistent liability standards under the laws of 50 different states. Congress expressed this intent through plain and unambiguous language that courts consistently have held precludes actions seeking to hold providers of interactive computer services liable for harm stemming from third-party online content. That is exactly what Plaintiffs seek to do here.

Plaintiffs try to evade the broad scope of CDA 230 by asking this Court to read into the plain text of the statute unwritten exemptions that Congress never adopted. Congress in 2018 passed FOSTA, which added exemptions to CDA 230 for certain types of trafficking claims, specifically (1) certain state criminal prosecutions where the underlying conduct violates federal criminal trafficking laws, 47 U.S.C. § 230(e)(5)(B)–(C), and (2) civil claims "brought under Section 1595 of title 18" by private plaintiffs and state Attorneys General, if the conduct underlying the claim violates § 1591 of the federal criminal trafficking laws, 47 U.S.C. § 230(e)(5)(A). Plaintiffs' claims do not fall into these exemptions. Rather, they ask the Court to create new exemptions that would expand on the plain statutory text and disrupt the balance Congress struck in exempting only certain federal civil claims.

In the face of statutory text that forecloses their claims, Plaintiffs avoid (and repeatedly mischaracterize) the text of CDA 230 and the cases applying it. Their principal argument is that CDA 230 does not apply because they have not asserted a defamation claim. But courts have rejected the idea that CDA 230 is limited to defamation claims, holding that its plain language bars any claim that would hold an interactive computer service liable based on a third-party's internet postings—just as Plaintiffs' claims here seek to hold Salesforce liable for their alleged injuries caused by third-party classified ads posted on the Backpage.com website.

1

Plaintiffs next argue their federal claim is exempt from CDA 230 because, in their view, FOSTA created a categorical exemption for all § 1595 claims. But the text of the exemption says the opposite—it states that a claim under § 1595 is exempted only if "the conduct underlying the claim constitutes a violation of section 1591," meaning the federal criminal trafficking law. 47 U.S.C. § 230(e)(5)(A). The exemption, in other words, applies *only* if the defendant's conduct meets the strict scienter standards for criminal liability under § 1591, as distinguished from the lower civil negligence standard under § 1595. Plaintiffs' opposition would read out of the statute this clear limitation on FOSTA's exemption for § 1595 claims—and in fact, at page 11, it actually misquotes the statutory text of the FOSTA exemption in an effort to support that result. Armed with the incorrect conclusion that they need only satisfy § 1595, Plaintiffs do not even try to establish that Salesforce's conduct violated § 1591, and instead rely exclusively on caselaw interpreting § 1595 *outside* the context of CDA 230 and FOSTA, such as cases against hotels.

Plaintiffs' argument that their state-law claims were exempted from CDA 230 by FOSTA also is without merit. As FOSTA's text makes clear, state-law civil claims such as those asserted here were not exempted from CDA 230. Plaintiffs point to prefatory text, section headings, an inapplicable and uncodified savings clause relating to pre-FOSTA claims, and out-of-context snippets of legislative history to try to cloud this issue, but Congress could not have made clearer that it was not exempting state-law civil claims: in fact, it removed a provision from the original bill that would have created such an exemption.

In addition to these flaws, Plaintiffs fail to allege any plausible violation of Illinois law, as Salesforce had no common law duty to prevent the criminal acts that injured G.G., and its alleged actions were not the legal or factual cause of her injuries. For all of these reasons, and because no amended pleading could cure these defects, the SAC should be dismissed with prejudice.

## II. ARGUMENT

**A. Plaintiffs' Claims Fall Within the Scope of CDA 230**

CDA 230 preempts any claim that treats the provider of an interactive computer service as the speaker or publisher of online third-party content, as Plaintiffs' claims seek to do here. Mot. 6–9. All of Plaintiffs' claims are barred by CDA 230, and their contrary arguments are meritless.

As to the scope of CDA 230, courts have uniformly rejected Plaintiffs' argument that the statute is limited to claims that "allege or implicate defamation." Opp. 17–18. As the Seventh Circuit and other federal circuits have held, CDA 230 applies to a broad range of claims that turn on third-party content and is not limited to defamation claims. *See Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (statutory reference to third-party "information" sweeps broadly); *accord Force v. Facebook, Inc.*, 934 F.3d 53, 64 n.18 (2d Cir. 2019) (CDA 230 "applies not only to defamation claims … [but also to] a wide variety of causes of action"); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 n.7 (N.D. Ill. 2009).

Also without merit is Plaintiffs' argument that their claims do not treat Salesforce as the publisher or speaker of third-party ads posted on Backpage.com because Plaintiffs "seek to hold Salesforce liable for knowingly benefitting from the facilitation of sex trafficking." Opp. 14–15. Courts also have rejected this tactic, where plaintiffs use "'artful pleading' to state their claims only in terms of the interactive computer service provider's own actions." *Daniel v. Armslist, LLC*, 926 N.W. 2d 710, 724 (Wis. 2019). The only link between G.G.'s injuries and Salesforce is through the ads for G.G. that Plaintiffs allege were posted on Backpage by a third party; there are no allegations directly tying Salesforce or even its software to G.G.'s injuries. Mot. 8–9. As such, the claims necessarily treat Salesforce as the speaker of the third-party ads. *See Chi. Lawyers'*, 519 F.3d at 671 (because craigslist did not author the challenged ads, the only way to hold it liable for their content would be to treat it as a "speaker," a result barred by CDA 230(c)(1)).

3

Finally, Plaintiffs' passing suggestion that Salesforce is not an "interactive computer service" (Opp. 14) is incorrect, as the statutory definition encompasses an "access software provider" that offers "enabling tools that … pick, choose, analyze, or digest content," (47 U.S.C. § 230(f)(2), (4)), and Plaintiffs allege that Salesforce provided Backpage online software tools to "[g]ather[] and manag[e] information," "collect[] data," and "[a]nalyz[e] information." SAC ¶ 49.

### B. Plaintiffs' Section 1595 Claim Is Not Exempted from CDA 230

#### 1. FOSTA Exempted Federal Civil Claims Brought Under Section 1595, But Only When the Defendant's Underlying Conduct Violates Section 1591

The opposition takes pains to avoid the fact that the FOSTA exemption for federal claims "in a civil action brought under" 18 U.S.C. § 1595 applies only to the extent "the conduct underlying the claim constitutes a violation of section 1591"—meaning the federal *criminal* sex-trafficking provision. 47 U.S.C. § 230(e)(5)(A). This means that, unlike non-CDA 230, non-FOSTA cases brought under § 1595 on a negligence theory—employing the "should have known" standard that is part of § 1595 but *not* part of § 1591—civil claims brought under the FOSTA exemption must meet the elements of § 1591, including the stricter intent standards. And it means that the *defendant interactive computer service itself*—not just some underlying perpetrator—must violate § 1591, as the exemption plainly states that it applies "in a civil action" brought under § 1595 if the "conduct underlying the claim," meaning the defendant's conduct, violates § 1591. This limitation was intentional, as Congress meant to lift CDA 230 only for a narrow class of cases where the defendant itself "knowingly facilitate[s] sex trafficking." *See* Mot. 11–12; 164 Cong. Rec. S1745 (Mar. 15, 2018); *see also* H.R. Rep. No. 115-572, at 3–4 (Feb. 20, 2018).

The opposition tries to read this specific and deliberate limitation out of the FOSTA exemption for § 1595 claims. It first misquotes the language of the FOSTA exemption in an effort to suggest that FOSTA exempted *all* civil sex trafficking claims under § 1595 so long as any

4

perpetrator violated § 1591, rather than only if the defendant interactive computer service did so. At page 11, the opposition asserts, purporting to quote the FOSTA exemption in CDA 230(e)(5) for civil claims, that "Section 230(e)(5) provides that claims under Section 1595 are exempt from Section 230's preemptive scope where the underlying 'violation of this chapter' is a violation of Section 1591." Opp. 11 (citing 47 U.S.C. § 230(e)(5)). From this, they claim that *Salesforce itself* need not have violated § 1591 as long as some other person did so, and they then proceed to cite cases where courts have applied the lower, "should have known" standard to defendants in non-CDA 230, non-FOSTA cases such as hotel cases. *Id.* 5–12. But this entire thesis rests on Plaintiffs' misquotation of the FOSTA exemption, which does not contain the quoted words "violation of this chapter." Rather, it clearly states that a "claim" in a civil action "brought under section 1595" is exempt "if the conduct *underlying the claim*"—that is, the conduct of the defendant—violates § 1591. 47 U.S.C. § 230(e)(5)(A) (emphasis added).

That Plaintiffs are misreading the FOSTA exemption to CDA 230 is confirmed by a recent decision addressing precisely this point. In *Doe v. Kik Interactive, Inc.*, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020), the court rejected a nearly identical argument where the plaintiff tried to argue that the interactive computer service need not have violated § 1591 in order for the exemption to apply. In *Kik*, a trafficking victim brought a § 1595 claim against a "web-based interactive service," asserting that the defendant failed to prevent sexual predators from communicating over its services. *Id.* at *1. Like Plaintiffs here, the *Kik* plaintiff relied on the lower "should have known" *mens rea* standard found only in § 1595 and argued that compliance with that standard— in that case, by showing that the defendant had reason to know that its site was being used by sexual predators—was enough to exempt the case from CDA 230 under FOSTA. *Id.* at *6. The court disagreed, finding that the plaintiff had to meet the criminal intent standard of § 1591 and

5

could not do so through negligence-based allegations. *Id.* at *6–*8. Here, that conclusion applies even more forcefully, as Salesforce is not alleged to have had *any* involvement in the operation of the Backpage.com website, and the only link to Salesforce is as a vendor of widely-used business software that Backpage allegedly used to communicate with its classified ad customers and organize its customer contacts and data. *See* Mot. 3–5.

The court in *Kik* also found irrelevant the non-CDA, non-FOSTA cases brought under § 1595 and cited by Plaintiffs here, because in cases implicating CDA 230, the court "must consider the extent to which FOSTA has affected the immunity provided by the CDA"—a question dictated not by the general run of § 1595 precedents but by FOSTA itself. *Kik*, 2020 WL 5156641, at *5–*7. And under the plain text of the relevant FOSTA exemption, CDA 230(e)(5)(A), where CDA 230(c)(1) applies, civil plaintiffs must plead "the exacting standard of 'actual knowledge' and 'overt act' employed in a criminal prosecution" under § 1591. *Kik*, 2020 WL 5156641, at *7. Anything less would "disregard the plain language and structure of FOSTA," as well as the legislative history discussed above. *Id.* The same conclusion applies here and bars Plaintiffs' claims, because, as shown below, they do not and cannot argue that their allegations satisfy § 1591.

### 2. Plaintiffs Have Not Even Tried to Establish That They Have Alleged a Section 1595 Claim Based on Conduct Violating Section 1591

Plaintiffs do not even try to argue that Salesforce's conduct violated § 1591. Opp. 6–10. This is for good reason, because under no scenario could the facts against Salesforce satisfy § 1591.

As Plaintiffs acknowledge (Opp. 12), § 1591 is a criminal statute that requires actual knowledge of a specific victim's age or that the victim was forced into a commercial sex act. Mot. 16; *see also Kik*, 2020 WL 5156641, at *7. Plaintiffs cite only allegations that Salesforce "should have known" of general "violations of sex trafficking law." Opp. 9–10. They do not and cannot allege that Salesforce had actual knowledge of G.G.'s trafficking.

6

The allegations also make clear that Salesforce was not involved in the sex-trafficking aspect of any alleged venture, but simply sold generally-available software and services. Mot. 3–5. The SAC clearly alleges, and opposition reiterates, that it was *Backpage* that "solicite[ed] sex traffickers," "communicate[d] with" traffickers, and "evade[d] law enforcement." Opp. 5–6; SAC ¶¶ 37–40. Salesforce is not alleged to have been involved in *any* of those things. These allegations cannot establish *Salesforce*'s participation in any sex trafficking venture under § 1591.

Once again, Plaintiffs cite inapposite caselaw under § 1595 to argue that the required "knowing benefit" need not have derived from any actual facilitation of sex trafficking by Salesforce, but rather can derive from Salesforce's general profits from the sale of its software. Opp. 7–8. But these cases *do not address § 1591*, under which general benefits that would have been attained even through a lawful commercial relationship are not a benefit attained "because of" the facilitation of sex trafficking. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

### C. Even Apart from CDA 230, Plaintiffs Cannot State a Section 1595 Claim

Even if CDA 230(e)(5)(A) generally exempted all § 1595 claims (as Plaintiffs erroneously contend), the SAC does not state a plausible § 1595 claim.

As an initial matter, unlike with their allegations about Backpage (SAC ¶¶ 44–45), Plaintiffs do not contend that Salesforce had specific knowledge of G.G. or any contact with her or her traffickers. Instead, they argue that general knowledge of a sex trafficking problem is enough to state a § 1595 claim because "[n]othing in Section 1595 suggests that a defendant must have knowledge as to the specific victim." Opp. 9–10. But as another court recently explained, mere notice of "general sex trafficking" is not enough under § 1595; rather, the plaintiff must establish "the knowledge element as to a *particular* sex trafficking venture." *S.J. v. Choice Hotels Int'l, Inc.*, 2020 WL 4059569, at *5 (E.D.N.Y. July 20, 2020). This requirement follows from the text of § 1595, which requires that the defendant "knew or should have known" that the venture

7

"has engaged in a violation of this chapter [*i.e.*, in this case, Section 1591]." 18 U.S.C. § 1595. Section 1591, in turn, prohibits acts where "*a person*" was caused to engage in a sex act through "means of force, threats of force, fraud, [or] coercion" or when "*the person* has not attained the age of 18 years." 18 U.S.C. § 1591 (emphases added). Because "[t]he statutory text speaks in singular terms," the "venture" in which the defendant is alleged to have participated must involve participation in the trafficking of the specific individual. *S.J.*, 2020 WL 4059569, at *5. Accordingly, courts applying § 1595 have rejected allegations of general knowledge of trafficking issues, absent knowledge of a victim's specific circumstances. *See, e.g.*, *Doe 3 v. Red Roof Inns, Inc.*, 2020 WL 1872333, at *3 (N.D. Ga. Apr. 13, 2020); *A.D. v. Wyndham Hotels and Resorts, Inc.*, No. 4:19-CV-0120-AWA-LRL, at p. 11 (E.D. Va. July 22, 2020). And even where courts found that a § 1595 claim was stated in certain cases against hotels, they pointed to allegations linking the hotels' knowledge to the circumstances "specific to [the plaintiff's] own sex trafficking," such as "signs [the victim] alleges should have alerted [the defendant] to her own situation," and have not held that general allegations, without more, can establish a sex-trafficking venture. *M.A. v. Wyndham Hotels*, 425 F. Supp. 3d 959, 968 (S.D. Ohio 2019).

Plaintiffs also cannot establish Salesforce's "participation in a venture" and a "benefit[]" knowingly received from that participation. 18 U.S.C. § 1595. These terms appear in both § 1595 and § 1591, triggering the "[r]ule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning," *Arnett v. C.I.R.*, 473 F.3d 790, 798 (7th Cir. 2007), even if the terms appear in separate civil and criminal provisions of the same statute. *Lane v. Brocq*, 2016 WL 1271051, at *9 n.7 (N.D. Ill. Mar. 28, 2016) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)). So for claims under § 1595, courts require that any "participation in a venture" be linked to the sex-trafficking aspects of the venture, and for any

8

"benefit" to be causally tied to such participation, just as with § 1591. *See, e.g.*, *Geiss*, 383 F. Supp. 3d at 169; *Red Roof Inns*, 2020 WL 1872333, at *3.

Plaintiffs urge the court to reject these cases in favor of a handful of decisions that assume, based on the different *mens rea* standards between § 1595 and § 1591, that neither the "participation in a venture," nor the knowing "benefit" in a § 1595 claim must be linked to the sex-trafficking aspects of a venture. Opp. 7, 11–12. But the fact that § 1595 allows a claim where the defendant "knew or should have known" that the venture engaged in a sex-trafficking violation does not change the requirement that the defendant "knowingly benefit" from "participation" in the venture, and certainly does not suggest that "participation" in innocuous activities by some other member of the venture would suffice. Accordingly, the lower scienter standard does not change the nature of the showing required for the other statutory elements—as the better-reasoned cases cited above make clear.

**D. Any Retroactive Imposition of Liability Under Section 1595 Would Violate the Ex Post Facto Clause**

Because Plaintiffs cannot state a violation of § 1595 within the scope of the FOSTA exemption, the Court need not reach Salesforce's argument that this exemption violates the Ex Post Facto Clause. Mot. 12–14. But Plaintiffs' arguments on this point are incorrect.

Plaintiffs' suggestion that the Ex Post Facto Clause does not apply because the underlying trafficking conduct was illegal "long before the 2018 passage of FOSTA" (Opp. 20) is incorrect. The Supreme Court has long held that the retroactive removal of a defense, just like the retroactive increase in a penalty, violates the Clause just as surely as would the retroactive creation of a new offense. *See Collins v. Youngblood*, 497 U.S. 37, 41–43 (1990) (reciting history of this rule).

Also without merit is Plaintiffs' suggestion that civil claims under FOSTA cannot trigger the Ex Post Facto Clause, and their related attempt to distinguish the DOJ report on that basis.

9

Opp. 19–20. In FOSTA, Congress imposed potentially substantial retroactive civil liability (including for punitive damages) for conduct that violates § 1591, the TVPA's criminal sex-trafficking provision. The limited civil exemption is functionally punitive, and applying it retroactively would violate the Clause. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 281 (1994). Plaintiffs' erroneous reading of FOSTA as exempting all § 1595 claims from CDA 230, whether or not they satisfy the criminal elements of § 1591, means that they never address Salesforce's arguments that such claims necessarily require a criminal law violation and also meet the other requirements for the application of Ex Post Facto principles to civil claims. Mot. 13–14.

### E. CDA 230 Does Not Include, And FOSTA Did Not Create, an Exemption For Sex-Trafficking Claims Brought Under State Civil Statutes

CDA 230(e)(5) does not include an exemption for state-law civil claims. This means that FOSTA did not carve out Plaintiffs' Illinois law claims from the broad preemption provision in CDA 230(e)(3). Plaintiffs offer a series of arguments for why their state-law claims fall outside CDA 230, but all of these arguments fail.

First, Plaintiffs argue that their state-law claims are not barred by CDA 230 because they are "fully consistent with … Section 1595." Opp. 14–15. But CDA 230's preemption provision bars state-law claims that are "inconsistent with this section," language that courts uniformly have read to mean inconsistent with CDA 230's prohibition on treating an interactive computer service as a speaker or publisher or third-party content. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354–55 (6th Cir. 2016) ("'No cause of action may be brought,' the Act says, 'and no liability may be imposed under any State or local law,' for any claim that purports to treat an 'interactive computer service' 'as the publisher or speaker of any information provided' by someone else") (citing 47 U.S.C. § 230(c), (e)(3)); *accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (state-law claim is preempted under CDA 230(e)(3) if it would

treat the defendant as a publisher or speaker of third-party content under CDA 230(c)(1)). And even if "inconsistent with this section" in (e)(3) were also limited by the *exemptions* to CDA 230—a reading no court has adopted—the FOSTA exemption for private civil actions applies only to claims that are "brought under" § 1595—*i.e.*, "brought under" federal law—so that claims that are "brought under" state-law are necessarily inconsistent with CDA 230 as amended by FOSTA.

Second, Plaintiffs argue that "FOSTA's express language" shows that Congress intended to remove *all* obstacles in the CDA to fighting trafficking. Opp. 15. But Plaintiffs cite everything *except* FOSTA's express language—unsurprisingly, since the plain language defines exactly what claims are exempted from CDA 230 and does not exempt state-law civil claims.

"The statutory text is the best evidence of a statute's purpose." *In re Lifeschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995). Following that rule, the court in *J.B. v. G6 Hospitality*, 2020 WL 4901196, at *5 n.2 (N.D. Cal. Aug. 20, 2020), rejected Plaintiffs' argument here, holding that the "sense of Congress" prefatory language and preamble "d[id] not change the Court's plain language finding" because the statute "specifies which federal and which state laws are to be carved out from the CDA's immunity" and does *not* carve out state-law civil claims. And FOSTA's savings clause merely provides that FOSTA does not affect claims that—unlike Plaintiffs' claims—were not barred by CDA 230 before FOSTA was enacted.

Third, Plaintiffs argue that FOSTA's legislative history "reinforces the lack of preemption" (Opp. 16–17) pointing to a House Committee Report they say shows Congress meant to preserve state civil trafficking claims against internet companies. In *J.B.*, the court rejected this argument because the report "specifically identifies impediments to criminal prosecutions at the state level, but does not similarly identify such concerns with state civil suits. … [T]he Report consistently focuses on criminal accountability at the state level." 2020 WL 4901196, at *6.

11

Plaintiffs try to downplay Congress' *rejection* of language in the original FOSTA bill that would have exempted state civil claims from preemption. They cite *District of Columbia v. Heller*, where the Supreme Court questioned the relevance of language that was deleted from an early draft of the Second Amendment. 554 U.S. 570, 589–90 (2008). But the Court's analysis in *Heller* proves Salesforce's point: to the extent Plaintiffs seek to add to FOSTA a new exemption for state-law civil claims that was specifically considered and rejected, the logic of *Heller* would preclude such an exercise. *See also* Mot. 10–11 (citing additional cases). Plaintiffs' argument that the rejected language would have gone even further to reach not only sex trafficking but the sexual exploitation of children only underscores the problem with Plaintiffs' elevation of "purpose" over text. If Congress had wanted to remove "all obstacles" to trafficking claims, as Plaintiffs argue, it easily could have included a broad or narrow exception covering state-law claims. But it did not.

Finally, Plaintiffs' argument based on the "presumption against preemption" is without merit. Where, as here, the statute includes an express preemption clause, courts "do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause"—because that enacted text "necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (internal quotation marks omitted). The preemption clause in CDA 230(e)(3) expressly states that "no cause of action shall be brought and no liability shall be imposed under any State or local law that is inconsistent with this section." As courts consistently have held, this language expresses Congress' clear intent to preempt state laws that would hold an interactive computer service liable as a publisher or speaker of third-party content, thus overcoming any presumption against preemption. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997); *O'Kroley*, 831 F.3d at 354–55. And courts also have made clear that regulating the internet, as CDA 230 does, is *not* a "field[ ] which the states have

12

traditionally occupied" (Opp. 18) because the internet is an instrument of interstate commerce and matter of national concern. *See Zeran*, 129 F.3d at 334 (CDA 230 is Congress' response "to a problem of national and international dimension"). Nor is there any "ambiguity with respect to Congress's preemptive intent," as Plaintiffs suggest. The plain language of CDA 230(e)(3) evinces a clear intent as to both the existence and scope of federal preemption. *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 n.2 (D.C. Cir. 2019). Plaintiffs' contrary argument rests almost entirely on legislative history, but the "plain text of the [statute]"—not legislative history—"begins and ends [the preemption] analysis." *Puerto Rico*, 136 S. Ct. at 1946.

### F. Plaintiffs Fail to State a Claim Adequately Under Illinois Law

Even if CDA 230 did not preclude Plaintiffs' Illinois law claims, they fail as a matter of law under the facts alleged here. As to duty, Plaintiffs tacitly admit that a software vendor has no general duty to protect the public from foreseeable dangers of its products related to sex trafficking, or to ensure its tools were "being used for good." SAC ¶ 55. Rather, they offer a new formulation—that Salesforce "had a duty not to facilitate a sex trafficking operation," as well as a duty to refrain from "*itself* engag[ing] … in the misuse of its own products to grow Backpage's sex trafficking business." Opp. 22–23.

Even if Plaintiffs could replead their allegations through their opposition brief, they could not avoid the fact that, in Illinois, a party "[o]rdinarily … owes no duty of care to protect another from the harmful or criminal acts of third persons," *MacDonald v. Hinton*, 361 Ill. App. 3d 378, 382 (2005), and that "permit[ing] [a criminal] to place an advertisement on [a] website" does not give rise to a duty to prevent harm caused by the criminal's ad placement, *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). Plaintiffs try to avoid *Vesely* by claiming that the website there "merely allowed the posting of guns for sale, which was not illegal as a general matter," and that "Salesforce did not merely provide a platform through which illegal conduct could theoretically

13

occur like in *Vesely*," but "knowingly assisted Backpage's illegal conduct." Opp. 22. But even taking those assertions as true, Salesforce's conduct is even more attenuated than in *Vesely*. Salesforce provided off-the-shelf business software to a third party that then provided a website platform that allowed still other third parties to post classified ads. And the defendant in *Veseley* was alleged to have specifically "design[ed] its website to encourage its users to circumvent existing gun laws." 762 F.3d at 666. The Seventh Circuit found that even this conduct—which was far more connected to illegality than Plaintiffs' most expansive characterizations of Salesforce's conduct—creates no duty to protect individuals potentially harmed by third-party criminals' use of its website to violate gun laws. *Id.*

Plaintiffs also fail to establish either factual or legal causation linking G.G.'s injuries to Salesforce's alleged conduct. As to factual causation, other than arguing in generalized terms that "Salesforce's technology was essential in enabling Backpage to operate and function as a hub for human trafficking," Plaintiffs point to no specific allegations tying G.G.'s injuries to Salesforce's alleged conduct. As for legal causation, Plaintiffs try to avoid the rule that "'independent intervening criminal acts' performed by G.G.'s trafficker [and abusers]" cuts off legal causation by suggesting that it was "foreseeable that Salesforce's services allowing Backpage to operate its sex trafficking operation would injure victims like G.G." Opp. 24. But Plaintiffs' efforts to distinguish *Crosby v. Twitter, Inc.*, 921 F.3d 617, 619, 625–26 (6th Cir. 2019), and *Fields v. Twitter, Inc.*, 881 F.3d 739, 744–50 (9th Cir. 2018), are unpersuasive. Plaintiffs argue that the website operators there did not have "knowledge of the customer's business" and that the cases did not involve "allegations connecting [the] wrongdoer to [the] defendant." Opp. 25. That is incorrect. Plaintiffs in both cases alleged that the defendants knew that ISIS was using their platforms to recruit and operate its terrorist organization, yet did nothing—facts that both courts

found insufficient to establish a causal connection between the platforms' conduct and the crimes ultimately committed by those terrorist organizations allegedly aided by their use of the internet platforms. *Crosby*, 921 F.3d at 620; *Fields*, 881 F.3d at 742–45.

Notably, Plaintiffs heavily embellish their allegations in the SAC with references to false allegations that were *removed* from prior versions of their complaint after Salesforce sent Plaintiffs' counsel Rule 11 letters. Mot. 4–5. Specifically, the opposition asserts that Salesforce actively participated in sex trafficking by "provid[ing] assistance to Backpage's sex trafficking operation that was tailored to Backpage's needs," "knowingly assist[ing] Backpage's illegal conduct," and "*itself* engag[ing] for years in the misuse of its own products." Opp. 22–23. But after the Rule 11 letters, all of these allegations were *removed* from the SAC, including assertions that "behind closed doors, Salesforce was knowingly and directly facilitating sex trafficking" for Backpage and that Salesforce "[u]s[ed] its products to directly solicit illegal prostitution." Dkt. 1, ¶¶ 4, 36, 38, 53(c); Dkt. 25, ¶¶ 39–41, 45, 49(i), 49(l). Instead, the SAC alleges that it was *Backpage itself*, not Salesforce, that purportedly used the "Salesforce technology"—*i.e.*, the CRM software "tools" that it purchased from Salesforce—to conduct aspects of its own business. SAC ¶¶ 35, 37, 39–41, 45, 49. The Court should reject Plaintiffs' attempts to revive these previously removed (and false) allegations, which in any event do not save their state-law claims.

### G. The Court Should Grant Salesforce's Motion to Dismiss without Leave to Amend

The final line of Plaintiffs' opposition seeks "the opportunity to file an amended brief." Opp. 25. But Plaintiffs fail to "explain what [they] would add that could entitle [them] to relief." *Sudduth v. Donnelly*, 367 F. App'x 703, 706 (7th Cir. 2010). Because this is Plaintiffs' third attempt at pleading claims against Salesforce (including removing multiple allegations in the face of a Rule 11 challenge), any amendment would be futile. The Court should grant Salesforce's motion to dismiss without leave to amend.

DATED: September 21, 2020　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Patricia Brown Holmes

　　　　　　　　　　　　　　　　　　　　Patricia Brown Holmes
　　　　　　　　　　　　　　　　　　　　Lucas T. Rael
　　　　　　　　　　　　　　　　　　　　RILEY SAFER HOLMES & CANCILA LLP
　　　　　　　　　　　　　　　　　　　　70 W. Madison St., Ste. 2900
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 472-8700
　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 471-8701
　　　　　　　　　　　　　　　　　　　　pholmes@rshc-law.com
　　　　　　　　　　　　　　　　　　　　lrael@rshc-law.com

　　　　　　　　　　　　　　　　　　　　Kristin A. Linsley (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　　　　　555 Mission Street
　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94105-0921
　　　　　　　　　　　　　　　　　　　　Telephone: 415.393.8395
　　　　　　　　　　　　　　　　　　　　Facsimile: 415.374.8471
　　　　　　　　　　　　　　　　　　　　klinsley@gibsondunn.com

　　　　　　　　　　　　　　　　　　　　Bradley J. Hamburger (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　　　　　333 South Grand Avenue
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071-3197
　　　　　　　　　　　　　　　　　　　　Telephone: 213.229.7658
　　　　　　　　　　　　　　　　　　　　Facsimile: 213.229.6658
　　　　　　　　　　　　　　　　　　　　bhamburger@gibsondunn.com

　　　　　　　　　　　　　　　　　　　　Veronica S. Lewis (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Andrew LeGrand
　　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　　　　　2001 Ross Avenue, Suite 2100
　　　　　　　　　　　　　　　　　　　　Dallas, TX 75201
　　　　　　　　　　　　　　　　　　　　Telephone: 214.698.3100
　　　　　　　　　　　　　　　　　　　　Facsimile: 214.571.2900
　　　　　　　　　　　　　　　　　　　　vlewis@gibsondunn.com
　　　　　　　　　　　　　　　　　　　　alegrand@gibsondunn.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant salesforce.com, inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of September, 2020, the foregoing document was filed using the Court's CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

/s/ *Patricia Brown Holmes*
Patricia Brown Holmes