**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**CHICAGO DIVISION**

| | | |
|---|---|---|
| G.G., *et al.* | § | |
| | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 20-CV-02335 |
| | § | |
| v. | § | Honorable Andrea R. Wood |
| | § | |
| SALESFORCE.COM, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' NOTICE OF APPEAL

Notice is hereby given that G.G. and Deanna Rose, the Plaintiffs in the above-named case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the Court's Memorandum Opinion and Order (Dkt. 105) and Judgment (Dkt. 106), entered May 16, 2022, and from the Court's order denying Plaintiffs' Motion to Alter or Amend the Judgment Under Rule 59(e) (Dkt. 114), entered August 15, 2022.

Respectfully submitted,

/s/ *Kenneth T. Fibich*

Kenneth T. Fibich (Pro Hac Vice)
(TX Bar No. 06952600)
Sara J. Fendia (Pro Hac Vice)
(TX Bar No. 06898800)
FIBICH, LEEBRON, COPELAND, BRIGGS
1150 Bissonnet Street
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030
tfibich@fibichlaw.com
sfendia@fibichlaw.com

Peter J. Flowers (IL # 06210847)
MEYERS AND FLOWERS, LLC
3 North Second Street, Suite 300 St.
Charles, Illinois 60174
Telephone: (630) 232-6333
Facsimile: (630) 845-8982
pjf@meyers-flowers.com

Warren W. Harris (Pro Hac Vice)
(TX Bar No. 09108080)
BRACEWELL LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (800) 404-3970
warren.harris@bracewell.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that a copy of this Notice of Appeal was served on the following via the Court's

ECF system on the 13th day of September 2022.

Patricia Brown Holmes
pholmes@rshc-law.com
Lucas T. Rael
lrael@rshc-law.com
RILEY SAFER HOLMES & CANCILLA LLP
70 W. Madision St., Suite 2900
Chicago, Illinois 60602
Telephone: (312) 472-8700
Facsimile: (312) 471-8701

Bradley J. Hamburger
bhamburger@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7658
Facsimile: (213) 229-6658

Kristin A. Linsley
klinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, California 94105-0921
Telephone: (415) 393-8395
Facsimile: (415) 374-8471

Veronica S. Moyé
vmoye@gibsondunn.com
Andrew LeGrand
alegrand@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

Attorneys for Defendant

*/s/ Warren W. Harris*
Warren W. Harris

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.6.3**
**Eastern Division**

G G (a minor), et al.

                 Plaintiff,

v.                                Case No.: 1:20−cv−02335
                                 Honorable Andrea R. Wood

Salesforce.com, Inc., et al.

                 Defendant.

---

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, May 16, 2022:

     MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompany Memorandum Opinion and Order, Defendant's motion to dismiss the third amended complaint [63] is granted. The third amended complaint is dismissed with prejudice. The Clerk is directed to enter judgment in favor of Defendant. Civil case terminated. Mailed notice (dal, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| G.G. (a minor), et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20-cv-02335 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| SALESFORCE.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

When G.G. was thirteen years old, she ran away from home and fell into the hands of a

sex trafficker. The trafficker posted advertisements for sex with G.G. on the classified ad website

run by Backpage.com ("Backpage").[1] As alleged in the complaint, Backpage did not just allow

but encouraged these types of illegal ads, to the point of becoming a dominant force in online sex

trafficking. Beginning in 2013, Backpage contracted with Defendant Salesforce.com, Inc.

("Salesforce") to provide it with customer relationship management ("CRM") business software

and support. That relationship allegedly helped grow Backpage's operations, including promoting

the business of sex traffickers. G.G. and her mother, Deanna Rose, (together, "Plaintiffs") have

now sued Salesforce pursuant to 18 U.S.C. § 1595, alleging that, through its contracts with

Backpage, Salesforce violated the federal anti-trafficking laws by knowingly benefiting from and

participating in a venture that it knew, or should have known, was engaged in illegal sex

trafficking. Salesforce has filed a motion to dismiss the complaint in its entirety pursuant to

---

[1] The Third Amended Complaint, which is the operative complaint, includes Backpage as a defendant.
Before Backpage answered the Third Amended Complaint, however, the Court granted Plaintiffs' motion
voluntarily to dismiss Backpage from this suit. (Dkt. No. 101.)

Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 63.) For the reasons given below, the Court grants the motion.

## BACKGROUND

For purposes of Salesforce's motion to dismiss, the Court accepts as true all well-pleaded facts in the Third Amended Complaint ("TAC") and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The TAC alleges as follows.

Backpage was established in 2004 as an online marketplace for various goods and services. (TAC ¶ 16, Dkt. No. 62.) Among other things, Backpage allowed classified ads for sex. (*Id.*) In 2008, Backpage's primary competitor, Craigslist, made it harder for users to post ads for sex on its platform. Capitalizing on the displaced ad volume, Backpage entered into a period of explosive growth, soon becoming the most popular online classified site for adult advertisements and deriving the vast majority (up to 99%) of its revenue from such ads. (*Id.* ¶¶ 16, 23–24.)

Salesforce is the world's top CRM platform, selling software to help companies manage their relationships with customers, improve profitability, and streamline processes. (*Id.* ¶¶ 29–30.) Specifically, Salesforce sells "software as a service" ("SaaS") technology consisting of a set of applications that, among other things, can help businesses manage sales and marketing functions, assist with customer service and support, provide customer data integration and support, permit both internal communications and communications with customers, offer business intelligence analytics, and process other forms of data. (*Id.* ¶ 31.) The Salesforce platform also has a "customer org"—that is, a portal that serves as a point of interaction between Salesforce and its customers. (*Id.* ¶ 32.) The customer org is confidential to each Salesforce customer and consists of

that customer's users, data, and automation. (*Id.*) Additionally, to help its customers achieve their business goals, Salesforce also provides personalized support. (*Id.* ¶ 33.)

As Backpage grew, it required more support and better CRM tools and capabilities to keep up with customer demand and scale its platform. (*Id.* ¶ 35.) To meet this need, Backpage contracted with Salesforce in 2013. (*Id.* ¶ 37.) As set forth in the Master Service Agreements between Salesforce and Backpage, Salesforce retained the right to delete or restrict access to Backpage's customer org if Backpage's actions or content was tortious. (*Id.* ¶ 47.) During their negotiations in November 2013, Backpage's Chief Executive Officer ("CEO") Carl Ferrer and another high-level executive met with a certified Salesforce Consulting Partner to assess Backpage's needs and goals as a business and to determine how Salesforce could help. (*Id.* ¶ 53.) An in-house Salesforce account executive continued those conversations, which eventually culminated in a deal between the companies. (*Id.* ¶ 54.) Over the next five years, Salesforce sold Backpage access to several products, including the premium "Enterprise Edition" of its CRM software. (*Id.*) An in-house Salesforce executive recommended the Enterprise Edition, which is described as "fully customizable." (*Id.* ¶ 45.) And, in 2015, Salesforce provided the technological infrastructure for Backpage to move its business overseas, allegedly to help it evade law enforcement scrutiny in the United States. (*Id.* ¶ 46.) Overall, Backpage purchased a new application, requested support, or renewed a contract with Salesforce on at least five occasions. (*Id.* ¶ 48.) Each of those times, Backpage consulted with Salesforce about how best to assess and meet its operational needs. (*Id.*)

Using the sophisticated CRM tools, as well as platform support, provided by Salesforce, Backpage was able to scale its operations and expand its business. (*Id.* ¶¶ 39–42.) The nature of those operations—and Salesforce's knowledge of them—are at the center of the present lawsuit.

Plaintiffs allege that Backpage was primarily (or even solely) a sex-trafficking business. As early as 2008, Backpage had been publicly identified by law enforcement and state and federal officials as being associated with sex trafficking. (*Id.* ¶ 18.) And over the next decade, Backpage faced calls to remove its adult services section by, among others, a group of state attorneys general. Backpage refused, resisting efforts to shut down its site on First Amendment grounds. (*Id.* ¶ 21.) Yet, even in the midst of persistent controversy and allegations regarding sex trafficking on Backpage, Salesforce continued to provide software and support to Backpage throughout this period. (*Id.* ¶ 50.)

Eventually, Backpage and its corporate leadership faced federal criminal charges. (*Id.* ¶¶ 25–26.) Backpage's CEO pleaded guilty to charges that he conspired to facilitate prostitution using a facility in interstate or foreign commerce and engaged in money laundering, while the corporation pleaded guilty to conspiring to engage in money laundering. (*Id.* ¶¶ 25 n.17, 26 n.18; *see also* Plea Agreement, *United States v. Ferrer*, No. 2:18-cr-00464-DJH (D. Ariz. Apr. 5, 2018); Plea Agreement, *United States v. Backpage*, No. 2:18-cr-00465-DJH (D. Ariz. Apr. 5, 2018).) As part of its plea agreement with the government, Backpage admitted to having operated as a site for the sale of illegal sex and to receiving benefits from the sex trafficking of minors. (*Id.* ¶¶ 26–27.)

G.G. was one of those sex-trafficking victims. In 2016, when she was thirteen years old, G.G. ran away from home and was soon picked up by her trafficker. (*Id.* ¶¶ 74, 76.) While searching for her daughter, Rose found an ad featuring G.G. on Backpage's Escort Page. (*Id.*) Rose notified Backpage that G.G., a child, was being advertised for sex on their website and requested that the ads be taken down. (*Id.*) Backpage, however, did not remove the ads and instead merely referred Rose to the National Center for Missing and Exploited Children. (*Id.*)

Although G.G. is no longer under the control of her trafficker, she suffered significant physical and emotional injuries as a result of her tragic ordeal and still suffers from the effects of being trafficked at such a young age. (*Id.* ¶ 79.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in the plaintiff's favor. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Federal law provides for both criminal sanctions against sex traffickers and civil remedies for victims of sex trafficking. Relevant to this case, 18 U.S.C. § 1591 creates both primary and secondary liability for the sex trafficking of minors, and 18 U.S.C. § 1595 allows any victim of such trafficking to sue for damages. Specifically, § 1595 allows victims of sex trafficking violations under § 1591 to "bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a). Beyond the requirement that there be an underlying violation of § 1591, a plaintiff seeking to impose liability under § 1595 must establish that the defendant (1) knowingly benefited

from (2) participating in a venture that (3) the person knew or should have known violated § 1591. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Oh. 2019).

Here, Plaintiffs seek to hold Salesforce liable under § 1591 for the trafficking of G.G. by her trafficker as facilitated by Backpage. Specifically, Plaintiffs allege that a sex trafficker used ads on Backpage to traffic G.G., a minor, in violation of § 1591. Plaintiffs further allege that Backpage facilitated and assisted the use of its site by sex traffickers such as the one who trafficked G,G., and that Salesforce, in turn, helped Backpage expand its business with those sex traffickers. Salesforce asks this Court to dismiss Plaintiffs' complaint against it for two reasons: first, Salesforce contends that Plaintiffs' claims are barred by the affirmative defense to liability under § 1595 provided by § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230; and second, Salesforce argues that Plaintiffs have failed to state an actionable claim under 18 U.S.C. § 1595. As the defense under § 230, if applicable, is determinative and would warrant dismissal with prejudice, the Court begins its analysis there.

## I.       Section 230

Section 230 acts as a bar against liability for certain types of claims against certain defendants—specifically, it provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, so long as a defendant can establish that it is (1) a provider or user of an interactive computer service and (2) the claims against it seek to treat it as a publisher of a third party's content, § 230 will bar those claims. *See Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (explaining that "[w]hat § 230(c)(1) says is that an online information system must not 'be treated as the publisher or speaker of any information provided by' someone else" for purposes of establishing liability).

Specifically in the context of sex trafficking claims, including under § 1595, courts have found that § 230 precludes liability where the allegations are predicated on the posting of user content—that is, the advertisements trafficking the plaintiffs. *See, e.g.*, *M.A. ex rel. P.K. v. Vill. Voice Media Hldgs, LLC*, 809 F. Supp. 2d. 1041, 1052, 1056 (holding that § 230 barred claims against Backpage because there was "no allegation that Backpage was responsible for the development of any portion of the ***content*** of the [sex trafficker's] posted ads or specifically encouraged the development of the offensive nature of that content."). Section 230's protection against such claims, however, is not absolute—as relevant here, Congress amended § 230 through the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") to explicitly exempt certain kinds of sex trafficking claims. FOSTA, Pub. L. No. 115-164, 132 Stat. 1253 (2018). As a result, § 230(e)(5)(A) now clarifies that "nothing in this section . . . shall be construed to impair or limit any claim in a civil action brought under [§ 1595], if the conduct underlying the claim constitutes a violation of [§ 1591]."

Section 230 functions as an affirmative defense. *See, Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *Bonilla v. Ancestry.com Operations, Inc.*, No. 20-C-07390, 2021 WL 5795306, at *4 (N.D. Ill. 2021). Typically, the existence of a potential affirmative defense does not "render the claim for relief invalid," and "courts should usually refrain from granting Rule 12(b)(6) motions" on that basis. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). However, "[a]n exception applies when the allegations of the complaint set forth everything necessary to satisfy the affirmative defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (internal quotation marks omitted). And courts often address the question of § 230's applicability on a motion to dismiss. *See, e.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019) (affirming dismissal of a complaint on

§ 230 grounds and citing cases in which courts had acted similarly). As the D.C. Circuit explained in *Marshall's Locksmith Service, Inc.*, invocation of § 230 immunity in a Rule 12(b)(6) motion is "[c]onsistent with Congress' intent to confer broad immunity for the re-publication of third-party content." *Id.*; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process."). Still, for a defendant to raise the defense at the motion to dismiss stage successfully, "plaintiff[s] must affirmatively plead [themselves] out of court." *Hyson USA*, 821 F.3d at 939 (internal quotation marks omitted). Salesforce contends that Plaintiffs here have done just that, arguing that the allegations of the TAC unambiguously establish that § 230 precludes Plaintiffs' claims against it and that no exception to § 230's protections apply.

### A. Salesforce as an Interactive Computer Service

First, Salesforce asserts that it qualifies for § 230's protections because it is a provider of an "interactive computer service." Section 230 defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Salesforce argues that it falls under the definition of "access software provider," which is defined as "a provider of software (including client or server software) or enabling tools which do any one or more of the following: (a) filter, screen, allow, or disallow content; (b) pick, choose, analyze, or digest content; or (c) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." 47 U.S.C. § 230(f)(4).

Indeed, applying the plain language of the statutory definition to the allegations in the TAC, Salesforce plainly qualifies as an "interactive computer service." At oral argument on this

motion, Plaintiffs conceded that Salesforce is a software company, and the complaint alleges that "Backpage paid the money that it earned from trafficking to Salesforce in exchange for the Salesforce technology and support necessary for Backpage to operate and expand its business." (TAC ¶ 77.) Looking further into details of the complaint, the support Salesforce provided Backpage involved the provision of technological capabilities—specifically, software that allowed Backpage employees to analyze and digest customer data as well as applications providing for the transmission of both internal employee communications and external customer outreach and support.[2] Plaintiffs' claims can best be summarized thusly: "Salesforce provided support to Backpage in the use of [Salesforce's sophisticated software and related] technologies and had knowledge of the manner in which Backpage operated with these enhanced capabilities."

---

[2] The following allegations are representative of how Plaintiffs' claims against Salesforce are predicated upon capabilities provided by Salesforce's software. Plaintiffs allege that Salesforce acted:

By "[p]roviding, assisting, supporting, and facilitating Backpage with capabilities and support for direct marketing campaigns, coupled with information gathering such as tracking clicks and tracking internet activity of the sex traffickers." (TAC ¶ 87(c).)

By "[p]roviding, assisting, supporting, and facilitating more personalized outreach with automation using 'dynamic content' and automated messaging to target traffickers and sex buyers." (*Id.* ¶ 87(d).)

By "[p]roviding, assisting, supporting, and facilitating account planning including customer follow up, account reminders, modification of marketing and sales plans, and cross-function customer service capabilities to improve outreach and services to traffickers." (*Id.* ¶ 87(h).)

By "[p]roviding, assisting, supporting, and facilitating a custom Application Programming Interface (API) for use by Backpage employees, which is a software intermediary that allows two applications to talk to each other. This capability was for use by Backpage and did not enable computer access by the public or non-Backpage personnel." (*Id.* ¶ 87(i).)

By "[p]roviding, assisting, supporting, and facilitating efficiency enhanced with automation, such as cutting the time it takes to email and nurture leads, scoring leads using customer parameters set by the customer using artificial intelligence (AI) and handling customer questions using automation such as chatbots." (*Id.* ¶ 87(o).)

What all these allegations have in common is that they describe capabilities provided by Salesforce's software and utilized by Backpage rather than actions taken by Salesforce itself.

(TAC ¶ 87(b).) Put differently, Salesforce, through its software, provided multiple users access to a set of enabling tools that allow those users to analyze, organize, arrange, transmit, and display content provided by a third-party (here, Backpage). This description, which aligns with the statutory definition, unambiguously establishes that Salesforce is an "interactive computer service."

Nonetheless, Plaintiffs argue that Salesforce has not established that it is an interactive computer service because it was not involved in the management of content posted to Backpage. Instead, Plaintiffs contend, Salesforce only managed relationships between Backpage and its customers—most of whom, Plaintiffs maintain, were sex traffickers. But managing those relationships did require Salesforce to analyze content—content provided *by Backpage* about its customers. (*See, e.g.*, TAC ¶ 87(f) (alleging that Salesforce "provid[ed], assist[ed], support[ed], and facilitat[ed] surveillance and analysis of customer and user activity with regard to access to ads").)

To avoid this result, Plaintiffs ask the Court to read an additional requirement into the statutory definition of interactive service provider. Specifically, Plaintiffs appear to take the position that § 230 only covers providers who host publicly accessible platforms. Salesforce's applications, of course, were only available internally to Backpage employees. But nothing in either the statutory text or case law supports this view. It is true, as Plaintiffs note, that § 230 most commonly has been applied to bar liability for defendants who host public platforms. *See, e.g.*, *Bennett v. Google, LLC*, 882 F.3d 1163, 1167–68 (D.C. Cir. 2018) (applying § 230 to bar claims against a public internet search engine); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1356–58 (D.C. Cir. 2014) (applying § 230 to bar claims against a social networking website). But the mere fact that the defendants that have successfully involved § 230 to avoid liability have been publicly

accessible does not mean that such accessibility is a statutory requirement. *See, e.g.*, *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1128 (N.D. Cal. 2016) ("[A] number of courts have applied the CDA to bar claims predicated on a defendant's transmission of nonpublic messages, and have done so without questioning whether the CDA applies in such circumstances." (citing cases)), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018)).

*Zango v. Kaspersky Lab, Inc.*, 568 F.3d 1169 (9th Cir. 2009), to which both Plaintiffs and Salesforce cite, is instructive. In *Zango*, the plaintiff "propose[d] a gloss on 'interactive computer service' that would construe a computer service as 'interactive' only if it enables people to access the Internet or access content found on the Internet." *Id.* at 1175. Based on that construction, the defendant, which distributed malware software, would not fall under § 230's definition. *Id.* at 1172. The Ninth Circuit, however, "decline[d] to read the statute so narrowly," explaining that, "[a]s written, § 230 does not limit the definition of 'interactive computer service' to services that provide access to the Internet; rather, its singular requirement is for 'access by multiple users to a computer server.'" *Id.* at 1175–76 (quoting § 230(f)(2)). The Court finds this analysis persuasive. After all, if an interactive computer service is defined as "***including*** specifically a service or system that provides access to the Internet," it is not necessarily limited to such services. 47 U.S.C. § 230(f)(2). And in any event, as alleged, Salesforce does provide access to its applications through the Internet. (*See* TAC ¶ 45 n.20 (citing to "Sales Cloud Pricing" when describing the software edition used by Backpage).)

Still, Plaintiffs insist that because Salesforce was not involved in managing the content underlying their claims—the ads posted on Backpage by G.G.'s sex trafficker—§ 230's protections cannot apply to Salesforce. According to Plaintiffs' reading, § 230's references to "content" must be understood not as content generally but rather as the content underlying the

claim against the defendant. Using this logic, Backpage, as the actual host of the content in question, would be considered a provider of interactive computer services, while Salesforce, whose applications supported Backpage's internal operations, would not. But the text of § 230 imposes no such requirement—an interactive computer service must simply permit users to interact with content, without any reference to *what* content. Without a textual basis or supporting case law, the Court declines to impose unilaterally a requirement that whether a defendant is an "interactive computer service" under § 230 depends on the nature of the claims against it.

Plaintiffs further assert that, at the very least, it is too soon to decide the issue of whether Salesforce qualifies as an interactive computer service. Plaintiffs contend that even if the Court is unable to hold that Salesforce is *not* an interactive computer service as a matter of law, discovery is still necessary to resolve the question of whether Salesforce in fact *is* one. But the allegations of the complaint make clear that Salesforce's technology allows users (Backpage employees) to manipulate content in a variety of ways, including by analyzing and organizing customer data and transmitting messages between Backpage and potential customers. When questioned during oral argument about the benefits of allowing limited discovery on this issue, Plaintiffs suggested that it could provide more insight into what Salesforce's software was doing. Yet the Plaintiffs already have provided a thorough overview of Salesforce's technology in the TAC, suggesting that they are already well-acquainted with the capabilities of the software. Similarly, the TAC contains detailed factual allegations regarding discussions between Salesforce and Backpage executives, including quotations from emails between Backpage and individuals associated with Salesforce. Given the detailed allegations already contained within the complaint, as well as Plaintiffs inability to specify how discovery would shift the analysis, the Court finds it possible to rule on this issue without further inquiry.

Accordingly, for the reasons discussed above, the Court holds that, as a matter of law based on the allegations of the TAC, Salesforce is an interactive computer service.

### B.     Salesforce as a Publisher

Section 230 does not, however, provide a complete defense for any type of claim against an interactive computer service. *Craigslist*, 519 F.3d at 669–70 (explaining that "§ 230(c) as a whole cannot be understood as a general prohibition of civil liability for web-site operators and other online content hosts," and noting, as an example, that defendants may be liable for claims like "contributory infringement if their system is designed to help people steal music"). But if Salesforce can be liable only in a capacity as a publisher, then § 230 applies. *Id.*; *see also City of Chi. v. StubHub! Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) (finding that a claim seeking a judgment that a ticket reseller was responsible for collecting state taxes did not implicate § 230 because the tax in question "[did] not depend on who 'publishes' any information or is a 'speaker'"). Whether a claim treats a defendant as the publisher of third-party content "does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another." *Jane Doe No. 1 v. Backpage.com LLC*, 817 F.3d 12, 19 (1st Cir. 2016) (citing cases); *see also Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017) (explaining that § 230 "is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications").

Here, Plaintiffs seek to hold Salesforce liable for harm caused to G.G. by her trafficking via ads posted on Backpage. In Salesforce's view, this is a straightforward example of a claim

treating a defendant as a publisher; after all, Plaintiffs are attempting to hold Salesforce responsible for the harmful effects of third-party content posted online. For their part, Plaintiffs argue that because Salesforce, even if it is an interactive computer service, did not make any decisions regarding the editing, monitoring, or publishing of the harmful advertisements, it is not being treated as a publisher. Plaintiffs suggest that Salesforce should have monitored Backpage's use of Salesforce's tools and deleted or restricted access to its software in response to illegal activity—in other words, that Salesforce acted as publisher regarding Backpage's content on Salesforce's own applications. (*See* TAC ¶ 47.) And at least some of Plaintiffs' claims relate to Backpage's use of Salesforce's CRM software to engage in online marketing communications with sex traffickers to expand Backpage's customer base. (*See* TAC ¶¶ 87(c), (g), (h), (k).) But those claims would also treat Salesforce as a publisher, as courts have consistently found that § 230 bars imposing liability on a provider of messaging or e-mail services for content and activities conducted via those services. *See Fields*, 217 F. Supp. 3d at 1127–29.

Plaintiffs' remaining allegations can be summed up thusly: Backpage, far from acting as a neutral platform for advertisements, actively sought out sex traffickers. To do so, Backpage worked with the sex traffickers to ensure that the advertisements, including those featuring G.G., were "sanitized" to hide their illegality. And Salesforce, even though it was aware that Backpage's business model was based on sex trafficking, provided tools and support for those tools to help Backpage expand its customer base. But while Plaintiffs, perhaps recognizing that the claims at their core rest upon the publication of an advertisement, repeatedly emphasize Salesforce's actions in their briefing, the TAC itself does not suggest that Salesforce ever took any actions regarding the harmful advertisements or the sex traffickers. (*See* TAC ¶ 40 ("Salesforce provided personalized support for the technological tools and instruments that made

14

it possible **for Backpage** to engage in the internet based on-line selling of sex, sex trafficking, and compelled prostitution.") (emphasis added).)[3] Put simply, Plaintiffs seek to hold Salesforce liable for the fact that Backpage used Salesforce software to cultivate sex traffickers as customers and grow the website's reach among sex traffickers, ultimately resulting in the posting of the advertisement featuring G.G. This is a quintessential claim covered by § 230: it seeks to impose liability on an interactive computer service for third-party content that was published on an online platform.

The Court's finding does not, as Plaintiffs suggest, abandon the statutory language of § 230 by asking not whether the claims treat Salesforce as the "publisher or speaker" of third-party content but whether the third-party content is a "necessary part" of the facts. Plaintiffs rely on *Doe v. Internet Brands* for the proposition that "the CDA does not provide a general immunity against all claims derived from third-party content." 824 F.3d 846, 853 (9th Cir. 2016). But *Internet Brands* itself makes clear that applying § 230 to Plaintiffs' claims does not contradict this principle. In *Internet Brands*, the defendant was the operator of a networking website for models. *Id.* at 848. Somehow, through an outside source, the defendant became aware of two men that were using the site to prey on women. *Id.* at 849. The plaintiff, one of the women victimized by those men, sued the website owner for failing to warn users about the presence of predators on its site and the risk of being victimized. *Id.* In finding that § 230 did not apply to preclude liability, the Ninth Circuit emphasized that, while the publishing of the plaintiff's data on the networking website was a but-for cause of her injuries, in many ways "publishing activity is a but-for cause of

---

[3] It might be the case that Backpage should be held "liable for creating and posting, inducing another to post, or otherwise actively participating in the posting" of the harmful statement. *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). But there is no allegation that **Salesforce** ever solicited advertisements, or edited them, or took any action to participate in the posting of G.G.'s advertisement.

just about everything" with which the defendant website was involved. *Id.* at 853. Because the plaintiff's claims were not for any content posted on the website, but rather for a failure to warn in which the duty breached did not require the defendant to take any action with regards to third-party content posted on its site, the claims did not treat the defendant as a publisher or speaker of such content. *Id.* at 851.

But here, Plaintiffs seek to hold Salesforce liable for the fact that G.G. was trafficked via advertisements placed on Backpage by her trafficker. Although Plaintiffs try to frame their claims in terms of Salesforce's actions (namely, helping Backpage expand the site on which G.G.'s trafficker would eventually place the advertisements trafficking G.G.), Plaintiffs do not contend that they would have a claim against Salesforce regardless of what was posted to Backpage. *See Jane Does 1–50 v. Salesforce.*, No. A159566 at 13–14 (Cal. Ct. App. Dec. 30, 2021) (not designated for publication) (holding that plaintiffs, alleging they "were injured by online advertising, placed on Backpage by pimps and traffickers, that caused them to enter sex trafficking and be sexually exploited," brought claims that "seek to treat Salesforce as the publisher of ads created by a third party" and are barred by § 230). Nor can Plaintiffs point to any distinct duty that Salesforce owed to Plaintiffs untethered from the third-party content. C*ompare Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021) (explaining that claims for negligent product-design against a mobile app developer sought to "hold [the defendant] liable for its role in violating its distinct duty to design a reasonably safe product.") In effect, Salesforce could not satisfy its "alleged obligation" to Plaintiffs without altering either the content generated by Backpage by monitoring the use of its software and forbidding its use in certain ways, or by insisting that Backpage only hosted certain content on its own site. In other words, Plaintiffs

claims are predicated on the notion that Salesforce should be held responsible for the existence of third-party content, her advertisements—that is, they treat Salesforce as a publisher.

Plaintiffs protest what they deem an "overbroad" interpretation of § 230. But as the Seventh Circuit has recognized, "Section 230(c)(1) is general," and "a law's scope often differs from its genesis." *Craigslist*, 519 F.3d at 671–72 (applying § 230 to bar claims brought against an online service provider for allegedly violating the Fair Housing Act by posting discriminatory notices). And other courts have applied § 230 to bar claims similar to those here, including claims directly against Backpage for sex trafficking on the basis that Backpage's decisions about various posting requirements were done with the express purpose of facilitating sex trafficking. *See Jane Doe No. 1*, 817 F.3d at 20–22 (holding that, although the plaintiffs tried to argue that § 230 did not apply "by claiming Backpage's decisions about what measures to implement deliberately attempt to make sex trafficking easier, this is a distinction without a difference" and finding that the claims "necessarily treat[ed] the website as a publisher or speaker of content provided by third parties, and, thus, are precluded by section 230(c)(1)").

In fact, it is the very breadth of § 230's coverage that motivated Congress to pass FOSTA for the express purpose of preserving claims such as these by exempting them from the protections of § 230. *See* FOSTA, Pub. L. No. 115-164, 132 Stat. 1253, 1253 (2018) (explaining that "clarification" of § 230 was "warranted to ensure" that § 230 did not provide protection to websites that unlawfully promote and facilitate sex traffickers). That Congress felt the need to amend § 230 to include express exemptions for certain sex trafficking claims suggests that such claims would otherwise be covered by § 230. Put simply, courts have coalesced around an understanding of § 230 that "grant[s] sweeping protection."[4] *Malwarebytes, Inc. v. Enigma*

---

[4] In advocating for a narrower reading of § 230, Plaintiffs cite a non-precedential statement by Justice Thomas in connection with a denial of certiorari in which he suggests that, in an appropriate case, the

*Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (statement of Thomas, J., respecting the denial of certiorari). It may be, as Plaintiffs argue, that their claims against Salesforce fall under this exemption. But, to be exempt, a claim must first be otherwise covered by the statute. And, for the reasons discussed above, Plaintiffs' claims do fall under § 230's coverage.

## C. FOSTA Amendments

In 2018, Congress amended § 230 through FOSTA, adding three exemptions for sex trafficking claims, including one exempting "any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title."[5] 47 U.S.C. § 230(e)(5)(A). Here, the parties dispute the scope of this exemption—namely, whether the provision exempts a "claim in a civil action brought under" § 1595 **only** to the extent that "the conduct underlying the claim" (*i.e.*, the conduct of the defendant in the civil action) constitutes a violation of § 1591 (*i.e.*, the criminal statute), or, as Plaintiffs propose, "the conduct underlying the claim" refers simply to the criminal conduct of the venture in which a defendant is participating and from which they are benefiting. In other words, must Plaintiffs show that Salesforce's own actions violated § 1591, or is it enough that someone (here, Backpage or G.G.'s trafficker) committed the § 1591 violation underlying the claim? Resolving this issue is a matter

---

Supreme Court should consider reexamining the prevailing understanding of § 230. *Malwarebytes*, 141 S. Ct. at 14. But, as Justice Thomas himself acknowledges, his proposed interpretation of § 230 does not reflect the existing state of the law. Accordingly, courts that have been asked to adopt Justice Thomas's suggestion have declined to do so. *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 91 (Tex. 2021) (stating that Justice Thomas's "more restrictive view of section 230 was articulated in a statement respecting the denial of certiorari, not in the decision of a case, and every existing judicial decision interpreting section 230 takes the contrary position"); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 7260057, at *1 (N.D. Cal. Dec. 10, 2020) (denying a motion for reconsideration brought in light of Justice Thomas's statement as Justice Thomas's statement "simply stated his opinion" and was "far from showing a change in or clarification of controlling law meriting reconsideration").

[5] The remaining two exemptions relate to state criminal charges where the "conduct underlying the charge would constitute a violation of" § 1591 or 18 U.S.C. § 2421A (another federal sex-trafficking statute). 47 U.S.C. § 230(e)(5)(B)-(C).

of statutory interpretation, and courts have reached different conclusions. *Compare Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020) (holding that "[t]he plain language of the statute removes immunity only for conduct that violates 18 U.S.C. § 1591") *with Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 920–22 (N.D. Cal. 2021) (holding that FOSTA created an exemption for any claim brought under § 1595 so long as it involved a claim predicated on civil sex trafficking under § 1591, regardless of whether the civil defendant themselves committed that violation). For the reasons discussed below, the Court agrees with those which find that, by the plain language of the statute, § 230(e)(5)(A) exempts claims brought under § 1595 only in circumstances in which the defendant's conduct constitutes a violation of § 1591.

The Court first turns to the text of the FOSTA exemption. Section 230(e)(5)(A) exempts "**any claim in a civil action** brought under section 1595 of Title 18, if the **conduct underlying the claim constitutes a violation of section 1591** of that title." (emphasis added). Applying the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning," the Court finds that the "claim in a civil action" and the "claim" which the conduct must underlie are the same. *C.I.R. v. Lundy*, 516 U.S. 235, 250 (1996) (internal quotation marks omitted); *see also Univ. of Chi. v. United States*, 547 F.3d 773, 782 (7th Cir. 2008) (explaining that the "sensible approach" is to read identical terms in a statute as having the same meaning). Indeed, here the words are used not just within the same act, but within the same sentence. Thus, the "most straightforward reading" of this provision requires an exemption only "if the civil defendant's conduct amounts to a violation of section 1591." *J.B. v. G6 Hospitality, LLC*, No. 19-cv-07848-HSG, 2021 WL 4079207, at *6; *see also Doe v. Reddit*, No. 8:21-cv-00768, 2021 WL 5860904, at *7 (C.D. Cal. Oct. 7, 2021).

This reading is further confirmed by reading the exemption in conjunction with the two other exemptions within § 230(e)(5). "The plainness or ambiguity of statutory language is determined" not just "by reference to the language itself," but also by reference to "the specific context in which that language is used." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997). Here, § 230(e)(5) contains two additional provisions stating that § 230 shall not apply to "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of" either § 1591 or 18 U.S.C. § 2421A. 47 U.S.C § 230(e)(5)(B)–(C). "In the context of a criminal charge, the underlying conduct necessarily refers to the conduct of the criminal defendant"—that is, the named defendant, not someone else must have committed the conduct underlying the charge. *J.B.*, 2021 WL 4079207, at *6.[6] Although civil claims and criminal charges have obvious differences, the Court agrees with the *J.B.* court that the fact "that Congress included nearly identical language in the same subsection, at the same time, strongly suggests that it intended to give the 'conduct underlying' phrases the same meaning."[7] *Id.* (citing

---

[6] The Court is not persuaded by the explanation offered by the *Twitter* court as to why these parallel exemptions should not guide the statutory analysis. The *Twitter* court pointed out that there was no authority determining whether subsection (B) "permits a state law criminal prosecution for sex trafficking to be brought against an ICS provider under a statute with a less stringent *mens rea* requirement than has been found to apply in § 1591(a) claims." *Twitter*, 555 F. Supp. 3d at 921 n.4. But this analysis elides the main point—that even if the charge had a lower *mens rea* requirement, the underlying charge is still against the named defendant.

[7] While the *Twitter* court correctly noted that there are exceptions to the "general presumption" regarding identical words in the same statute, here the Court does not see any reason to deviate from the presumption. *Twitter*, 555 F. Supp. 3d at 921 n.4. This "presumption does not apply where 'there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.'" *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Oh. 2019) (quoting *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)). Yet the only variation between how the phrase "conduct underlying the charge or claim" is used between subsection (A) and subsections (B) and (C) is that (A) refers to a civil claim and (B) and (C) refer to a criminal charge. Given the parallel structure, as well as the fact that this phrase is used within the same part of the act, the Court does not find that the difference between civil and criminal liability qualifies as such a "variation" so as to rebut this general presumption.

*Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) (explaining that the "maxim" that "identical words and phrases within the same statute should normally be given the same meaning" is "doubly appropriate" where the phrase in question is inserted into two provisions "at the same time")). Put simply, even assuming that a statute is "remedial," the Court must first turn to the text of the statute. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) ("Courts should confine their attention to the purposes Congress sought to achieve by the words it used."). And here, the text, both by its plain terms and statutory structure, is clear that the FOSTA exemption applies only where the civil defendant's actions violated § 1591.

This conclusion does not, as Plaintiffs contend, "eviscerate" the civil negligence standard in § 1595. To begin, § 230 only applies in limited circumstances—when the defendant is an interactive computer service and the claims seek to treat the defendant as a publisher of third-party content. This interpretation of the exemption has no impact on claims that do not meet those criteria, such as claims commonly brought by plaintiffs against hotels who rent rooms to sex traffickers. Moreover, Plaintiffs' position misunderstands the interaction between § 230 and the FOSTA Amendments. Before the FOSTA Amendments, ***any*** claim against a defendant that met § 230's requirements, including those for sex trafficking under § 1595, would be completely barred. Under the Court's reading of the plain language of the statute, the FOSTA exemptions created a limited exemption to that otherwise broad protection for certain kinds of (but not all) § 1595 claims. It is true that the outcome here results in a situation in which "a sex trafficking victim who seeks to impose civil liability on an ICS [interactive computer service] provider on the basis of beneficiary liability faces a higher burden than a victim of sex trafficking who seeks to impose such liability on other types of defendants." *Twitter*, 555 F. Supp. 3d at 920. But § 230

inherently places higher burdens on plaintiffs seeking to impose liability on interactive computer services providers by barring certain types of claims altogether.[8]

Looking to the legislative history confirms that the FOSTA exemption was not meant to encompass fully every possible claim under § 1595. The original version of the bill that became FOSTA would have provided that § 230 "shall not be construed to impair the enforcement or limit the application of (A) section 1595 of title 18, United States Code." H.R. 1865, 115th Cong. § 3(a)(5) (as introduced in the House, Apr. 3, 2017). Under this language, **any** violation of § 1595 would be enough to exempt the claim from § 230—exactly the interpretation Plaintiffs now propose for the enacted version. But, as discussed in depth by the *J.B.* court, during legislative hearings on the bill, several witnesses raised concerns that § 1595's "knew or should have known" language was too expansive and risked encouraging litigation against law-abiding intermediaries. *J.B.*, 2021 WL 4079207 at *7–11 (providing a thorough analysis of the various drafts and revisions of the FOSTA amendment to § 230, including contemporaneous comments from stakeholders expressing apprehension about § 1595's knowledge standard being imported into § 230 given challenges in showing a website's knowledge). In response, Congress added the limiting language requiring that the "conduct underlying the claim" be a violation of § 1591. *Id.* at *11. Thus, the final bill reflected a "compromise by including a narrowed federal civil sex

---

[8] The Court also notes that in both *Twitter* and *Doe v. Mindgeek*, 558 F. Supp. 3d 828, 836 (C.D. Cal. 2021), the courts stated that they were adopting the reasoning of the court in an earlier ruling in *J.B. v. G6 Hospitality, LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 8, 2020), in finding that any claim under § 1595 was covered by the FOSTA exemptions. But the earlier ruling by the *J.B.* court did not directly address whether "conduct underlying the claim" required the plaintiff to allege that the named defendant violated § 1591. Rather, the court first addressed whether § 230(e)(5) exempts **state** law civil claims, and second, the knowledge standard for a claim under § 1595 generally, without reference to the impact on claims implicating § 230. *Id.* at *4–5, 8.

trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support, or facilitation" of sex trafficking. *Id.*.

Accordingly, to state a claim that is exempted from § 230's coverage, Plaintiffs must allege Salesforce engaged in conduct that would violate § 1591. Plaintiffs do not dispute that they are unable to do so. Section 1591 creates two types of offenses: a primary liability offense under § 1591(a)(1) and a secondary liability offense under § 1591(a)(2). As to primary liability under § 1591(a)(1), there is no allegation that Salesforce "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" any person while knowing (or in reckless disregard of the fact) that the person "will be caused to engage in a commercial sex act" and is either under the age of 18 or is subject to force, coercion or threats. Instead, the complaint makes clear that G.G.'s trafficker engaged in these trafficking violations. 18 U.S.C. § 1591(a)(1). As to secondary liability, § 1591(a)(2) criminalizes "benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in a violation of" § 1591(a)(1). For purposes of § 1591(a)(2), "participation in a venture" is defined as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). Accordingly, a secondary actor under § 1591(a)(2) must actively and knowingly assist or facilitate a primary trafficking violation, which is tied to a specific victim. But Plaintiffs have not alleged that Salesforce knew of G.G.'s circumstances or in any way assisted, supported, or facilitated the primary trafficking violation. Accordingly, the Court finds (and the parties do not dispute) that Plaintiffs have not pleaded that Salesforce itself violated § 1591.

Thus, because a claim brought under § 1595 must allege conduct of the defendant that would violate § 1591, and Plaintiffs have failed to allege that Salesforce committed any criminal

sex trafficking violation, the FOSTA exemption does not apply. Accordingly, § 230 precludes Plaintiffs' claims against Salesforce.

## II.     Failure to State a Claim

Even if their claim were not barred by § 230, Plaintiffs' claim could not proceed as currently pleaded because they have failed to state a claim. As noted above, in addition to the requirement of an underlying violation of § 1591, there are three elements to a § 1595 claim: the plaintiff must allege that the defendant (1) knowingly benefited from (2) participating in a venture that (3) the person knew or should have known violated § 1591. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Oh. 2019).[9] The Court addresses each element in turn.

### A.     Knowingly Benefit

The Court first considers what it means to "knowingly benefit" from a violation of § 1591. The law as to the knowledge element for a § 1595 violation is currently unsettled, with the parties here unsurprising urging the Court to adopt the standard most in their favor

"Knowledge" means simply to have "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, Black's Law Dictionary (11th ed. 2019). So, pursuant to § 1595, a defendant must have an awareness or understanding that it was receiving some benefit, be it financial or some other form of value, from participating in the venture. Salesforce suggests that the Court should read "benefited" in conjunction with the phrase "from participation in a venture" to require that any benefit derived must be the specific result of that venture. In other words, any benefit

---

[9] The parties do not dispute that G.G. was trafficked by her sex trafficker in violation of § 1591, satisfying § 1595's requirement of a "qualifying predicate act." *M.A*, 524 F. Supp. 3d at 964.

received by Salesforce would have to, essentially, be a form of "profits" from Backpage's sex trafficking venture. The cases to which Salesforce cites in support of this interpretation, however, do not go so far as to require that the "benefits" be "profits." Instead, those case simply stand for the proposition that there must be some "causal relationship between the [defendant's] participation in sex trafficking and their purported benefit." *Geiss v. Weinstein Co. Hldgs. LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The controlling question, however, is whether [the sex trafficker] provided any of those benefits to [the defendant] ***because of*** [the defendant's] facilitation of [the sex trafficking]."). This Court thus understands § 1595 to require a plaintiff to plead only that the defendant knew that it was receiving benefits (financial or otherwise) because of its participation in a venture that violated § 1591. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (finding that the rental of a room (or a franchisor's receipt of royalties for that rental) "constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element").

### B.      Participate in a Venture

The Court next considers what it means to "participate in a venture." There is no current consensus among courts to have considered the issue as to whether the second element incorporates the definition of "participation in a venture" from the criminal provisions in § 1591. *See A.B. v. Hilton Worldwide Hldgs, Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (collecting cases). Under § 1591(e)(4), "the term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." Courts importing § 1591's definition have stated that the "participation giving rise to the benefit must be participation ***in a sex-trafficking venture***, not participation in other activities." *Geiss*, 383 F. Supp. 3d at 169 (citing to *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)). In other words, "some

participation in the sex trafficking act itself must be shown." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). But § 1591 states that these definitions apply "[i]n this section," not throughout the entire statute. 18 U.S.C. § 1591(e). And, as courts that have declined to take this approach have explained, reading "participate in a venture" to require "knowingly assisting, supporting, or facilitating" would render other statutory language in § 1595 nonsensical. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). This is because applying the criminal definition, which requires participation to be knowing, would essentially void the "should have known" language contained in the civil remedy. *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 186 (E.D. Pa. 2020); *Red Roof Inns*, 21 F.4th at 724 ("In other words, the [defendants'] formulation requires a plaintiff to prove that the defendant knowingly facilitated a violation, making the 'should have known' language superfluous.")

This Court interprets "participation" as the majority of courts do and finds that "actual 'participation in the sex trafficking itself' is not required to state a claim under section 1595." *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fl. 2020). Thus, "liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking." *M.A.*, 425 F. Supp. 3d at 970 (finding that the plaintiff alleged sufficient facts to show participation in a venture under § 1595 by "alleging that [the defendants] rented rooms to people it knew or should have known where [sic] engaged in sex trafficking"). Put another way, the venture need only be one that violated sex trafficking law and the defendant need not directly participate in that violation. Still, "the ordinary understanding of culpable assistance to a wrongdoer [] requires a desire to promote the wrongful venture's success." *GTE*, 347 F.3d at 658. And the term "participation" itself requires more than just passive facilitation, but some level of active engagement. *See Participation*,

*Black's Law Dictionary* (11th ed. 2019) ("The act of taking part in something"); *Participate*, *Oxford English Dictionary Online*, https://www.oed.com/view/Entry/138244?rskey=JNFUDz&result=2&isAdvanced=false#eid (last visited May 5, 2022) ("To take part; to have a part or share with a person").

Thus, in cases where there is no alleged "direct association" between the beneficiary and the trafficker, courts have "required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement'" as to the venture which the defendant knew, or should have known, involved sex trafficking. *J.B. v. G6 Hospitality, LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, *9 (N.D. Cal. Aug. 20, 2020) (quoting *M.A.*, 425 F. Supp. 3d at 970). For example, courts have found that such a business relationship existed between a defendant hotel and a sex trafficker where the defendants themselves rented rooms to those they knew, or should have known, were engaged in sex trafficking. *See, e.g.*, *H.H. v. G6 Hospitality, LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *5 (S.D. Oh. Dec. 6, 2019). But a plaintiff must "connect the dots" between their trafficking and the specific defendant. In cases involving hotel franchisors, for instance, claims that branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking may be "sufficient to state a plausible claim against the specific hotels where [the plaintiff] was trafficked, [but] they do not make a plausible claim that [the franchisors] directly participated in a venture that **trafficked [the plaintiff]**." *B.M.*, 2020 WL 4368214, at *5; *see also Red Roof Inns*, 21 F.4th at 726–27 (finding that defendant hotel franchisors who owned, supervised, and controlled the renting of rooms, as well as "read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating

sex trafficking at the hotels," merely "financially benefited" from the renting of hotel rooms to sex traffickers, not that they "participated in an alleged common undertaking or enterprise with the [plaintiffs'] sex traffickers or others at the hotel who violated the statute").

### C. Knowledge that the Venture Violated § 1951

Lastly, the Court turns to the third element, which requires a defendant to have "known or should have known" the venture violated § 1591. Put another way, it requires a defendant to have actual or constructive knowledge that the venture violated § 1591. *Red Roof Inns*, 21 F.4th at 725. Courts interpreting § 1595 regularly describe the "knew or should have known" language as establishing a negligence standard. *See id.* (defining constructive knowledge as "knowledge which 'one using reasonable care or diligence should have'" (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019))); *see also Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) ("[T]he plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge.").

Although it is clear that § 1595 allows for either actual or constructive knowledge, however, courts have reached different conclusions on whether a defendant must "satisf[y] the knowledge element as to a ***particular*** sex trafficking venture." *S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). In other words, is it enough that the defendant knew or should have known that the venture has violated § 1591 by engaging in sex trafficking generally? Or must the defendant have known or should have known that the venture is engaged in a violation of § 1591 as to the specific plaintiff? For purposes of this case, the Court must decide whether Plaintiffs can successfully plead a claim under § 1595 by alleging that Salesforce knew or should have known that Backpage was violating sex trafficking laws, or if Plaintiffs must allege

that Salesforce knew or should have known that G.G. in particular was being trafficked using the site. The Court concludes it is the latter.

Section 1595 requires that the venture engage in an act in violation of § 1591, which requires knowledge *as to a specific victim*. *See* 18 U.S.C. § 1591(a)(1) (criminalizing knowingly recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting by any means *a person*) (emphasis added); 18 U.S.C. § 1591(a)(2) (criminalizing benefiting from participation in a venture that has violated § 1591(a)(1) where the defendant knows that "means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause *the person* to engage in a commercial sex act, or that *the person* has not attained the age of 18 years and will be caused to engage in a commercial sex act") (emphasis added). And "[t]he statutory text speaks in singular terms—'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter.'" *S.J.*, 473 F. Supp. 3d at 154 (quoting 18 U.S.C. § 1595(a) (emphasis in original)). Accordingly, a claim under § 1595 requires that "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated [§ 1591] *as to the plaintiff*." *Red Roof Inns, Inc.*, 21 F.4th at 726 (emphasis added).

Plaintiffs suggest that this interpretation improperly imports the knowledge requirements of § 1591 into § 1595. But Plaintiffs confuse the knowledge requirement for what it means to "participate in a venture" with the knowledge requirement as to the nature of the venture itself. Thus, while a plaintiff need not allege that a defendant "knowingly assisted" a venture engaged in a violation of § 1591 to "participate" in that venture, the plaintiff does need to allege that the defendant knew (or should have known) about the *specific* sex trafficking venture—that is, the

venture tied to the underlying § 1591 violation **of the plaintiff**. *See B.M.*, 2020 WL 4368214, at

*5 (dismissing a complaint for being "devoid of any facts linking these Defendants . . . to the sex

trafficking of this Plaintiff" (emphasis added)). *A.B.*, which Plaintiffs cite as holding that § 1595

does not require a defendant to have knowledge of the specific victim, provides a useful

illustration. There, in finding that the plaintiffs adequately pleaded a § 1595 claim, the court

emphasized that, had the complaint only contained general allegations as to the problem of sex

trafficking, efforts to combat that issue, and incidents involving other victims and other hotels, it

"may [have] agree[d]" with the defendant that the allegations were insufficient. 455 F. Supp. 3d at

193. However, the *A.B.* court noted that the plaintiff had alleged facts that did establish

defendant's knowledge of her own trafficking—among other allegations, that the traffickers had

used defendant's hotels, multiple men an evening entered the hotels creating a "voluminous and

obvious constant stream of male visitors" to her rooms, her trafficker "repeatedly" paid for rooms

at the hotels in advance and with prepaid cards, and staff at the hotels observed the plaintiff with

visible signs of injury multiple times. *Id* at 193–94.

This approach is consistent with the majority view of the courts to have considered such

cases. *See, e.g.*, *S.Y.*, 476 F. Supp. 3d at 1257 (holding that defendant hotels knew or should have

known of the venture that sex trafficked the plaintiffs the complaint alleged that the traffickers

requested rooms by exit doors, paid in cash, excessive condoms were present in the rooms, hotel

staff observed the plaintiffs be escorted by traffickers into the hotels, hotel staff heard plaintiffs'

screams, the sex trafficking ventures operated out of the same hotel room for days in succession,

and multiple men came and went from plaintiffs' rooms without luggage or personal possessions);

*M.L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17,

2020) (denying a motion to dismiss by the defendant website where "the complaint alleges that

[the defendant website] not only knew that human trafficking was occurring on its website, but that [the defendant website] was part of an active conspiracy with plaintiff's traffickers ***to traffic plaintiff***," and denying a similar motion to dismiss by the defendant hotel where the complaint alleged that hotel staff contacted the plaintiff to request that she be more discrete with her activities and that police had spoken with the hotel regarding the plaintiff being a minor (emphasis added)); *compare Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC, 2021 WL 5579117, at *8–9 (D. Colo. Nov. 30, 2021) (finding that allegations that a defendant hotel franchisor was "on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry" was "not sufficient to show that the defendant should have known about what happened to [the] plaintiff" and thus could not sustain § 1595 claim).

In short, to bring a claim for liability under § 1595, a plaintiff must plausibly allege that a defendant (1) knowingly benefited, either financially or otherwise, from (2) participation in a venture, although such participation need not necessarily be direct participation in the sex trafficking, and that (3) the person knew or should have known violated § 1591 as to the plaintiff.

### D. Application to Plaintiffs' Claims Against Salesforce

With this understanding of the elements for a beneficiary claim under § 1595 in mind, the Court now considers whether Plaintiffs have stated such a claim against Salesforce and concludes that they have not. Specifically, Plaintiffs have failed to allege plausibly that Salesforce knew, or should have known, about G.G.'s specific trafficking or any of the advertisements trafficking her on Backpage. *Compare Twitter*, 555 F. Supp. 889, 925 (finding that plaintiffs adequately pleaded a § 1595 claim where they alleged that the defendant website was alerted to the existence of videos involving the plaintiffs and provided evidence that the plaintiffs were underage in response to a request for more information). Plaintiffs do not contend that they have pleaded such

knowledge, instead relying on their argument that § 1595 does not require that Salesforce have any knowledge or involvement as to G.G's specific trafficking. But, as has already been discussed, this Court disagrees with that approach and finds that § 1595 requires a defendant to have participated in a venture that the defendant knew or should have known was involved in sex trafficking of the plaintiff, not sex trafficking more generally. Thus, because Plaintiffs have not alleged that Salesforce had actual or constructive knowledge of G.G.'s trafficking, they have not adequately pleaded that element of a § 1595 claim.

Plaintiffs also have not adequately alleged that Salesforce "participated" in the venture with Backpage that trafficked G.G. Considering the TAC as a whole, Plaintiffs allege that Backpage used Salesforce's CRM software to cultivate and expand a customer base of sex traffickers, including G.G.'s trafficker. At times, the TAC appears to suggest that Salesforce itself took actions to assist Backpage's efforts. (*See* TAC ¶ 41 ("Salesforce was the driving force that enabled Backpage to scale its operations and increase the trafficking conducted on Backpage.").) But the factual allegations directly underlying these claims make it clear that Salesforce provided the technology (and corresponding technological support) that Backpage utilized to grow its own business. (*See Id.* ("By providing technology, implementation skills, and ongoing support that all constitute affirmative acts by Salesforce that encouraged the wrongdoing in which Backpage.com was engaged.").) In other words, while Salesforce may have provided the tools that Backpage used to build a business based on sex trafficking, Salesforce did not take part in the construction of the business itself.

Allegations concerning Salesforce's role in marketing Backpage to sex traffickers illustrate how the actions Plaintiffs allege Salesforce took to assist and support Backpage in its sex trafficking venture are, in actuality, actions that Backpage took using Salesforce's CRM software.

The TAC describes Salesforce's CRM technology as providing companies "access to a coordinated set of applications tailored to its business model, including applications that . . . manage all marketing functions." (*Id.* ¶ 31.) Plaintiffs then allege that Salesforce "facilitat[ed] and provid[ed] support for direct marketing campaigns for Backpage to expand Backpage's sex trafficking venture." (TAC ¶ 87(c).) But even in this allegation, Plaintiffs acknowledge that it is Backpage, not Salesforce, that actually expanded the operations through marketing activities. (*See also* Pls.' Resp. to Mot. to Dismiss at 25, Dkt. No. 66 ("Among other things, Salesforce facilitated trafficking through Backpage by assisting Backpage in its marketing efforts that allowed Backpage to solicit sex traffickers and their victims.") The mere fact that Salesforce's software played a critical role in Backpage's expansion, indeed, even if such expansion would not be possible without the capabilities provided by that software, is not enough to demonstrate Salesforce's own participation in any venture with Backpage. *See United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011) (explaining the difference between "assistance" and "participation," noting that insurers who cover operations do not participate in that operation, fans who cheer the home team may help the team win but do not participate in the game, and engineers who design soldiers' weapons may support the war effort but do not participate in the war). Thus, to the extent Plaintiffs' claims rest on any actions taken by Backpage using Salesforce's software, they have not adequately alleged Salesforce "participated" in any venture.

Plaintiffs contend that they have plausibly alleged that Salesforce did not just sell Backpage off-the-shelf software but instead also offered Backpage "personalized support." Yet, although the complaint contains multiple mentions of Salesforce providing Backpage with "personalized services tailored specifically to the needs of its illegal business," Plaintiffs provide no examples of these services, or description, or even suggestion, of how Salesforce altered its

software to better facilitate sex trafficking. (TAC ¶ 46.) For instance, Plaintiffs emphasize that Salesforce provided technical support in moving some of Backpage's operations overseas—ostensibly to help Backpage avoid U.S. law enforcement. But even assuming that Backpage's fear of criminal liability motivated its desire to have a duplicate copy of its system, the TAC contains no facts indicating that *Salesforce* was aware of this motivation, nor do Plaintiffs explain how, given that the complaint alleges that G.G. was trafficked on backpage.com (and not any overseas website), this duplicate copy relates to their claims.

Similarly, Plaintiffs point to the allegation that an in-house Salesforce executive recommended that, based on Backpage's needs (which Plaintiffs assume to be related to sex trafficking and prostitution), Backpage use Salesforce's Enterprise CRM edition. Plaintiffs emphasize that the Enterprise CRM edition is described as "fully customizable," suggesting that this means that Salesforce then took action to tailor the software to better meet Backpage's needs (which, Plaintiffs allege, were solely related to sex trafficking). Yet the mere fact that the Enterprise CRM edition is customizable (that is, capable of being customized) does not, without more, support a reasonable inference that Salesforce actually customized the software to meet Backpage's needs. In sum, Plaintiffs have failed to allege facts supporting that Salesforce "took part in" Backpage's sex-trafficking venture.

Thus, for the reasons stated above, the Court finds that Plaintiffs have failed to state a claim against Salesforce for beneficiary liability under § 1595. If this were the only basis for dismissal, the Court would consider dismissal without prejudice to allow Plaintiffs one final opportunity to amend their complaint to state a viable claim. But as discussed above, the allegations of the TAC establish that Salesforce is entitled to dismissal based on the affirmative

defense in § 230 of the Communications Decency Act as well. Accordingly, the dismissal is with prejudice.

## CONCLUSION

Accordingly, this case is dismissed with prejudice because Salesforce is protected from liability under § 230 of the Communications Decency Act. Even if § 230 did not apply, Plaintiffs have failed to plead adequately the required elements of a claim for beneficiary liability under § 1595. The Clerk will enter final judgment in favor of Salesforce.

ENTERED:

Dated:  May 16, 2022

Andrea R. Wood
United States District Judge

ILND 450 (Rev. 10/13)  Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

G G, et al,

Plaintiff(s),

v.

Salesforce.com, Inc.,

Defendant(s).

Case No.  1:20-cv-02335
Judge Andrea R. Wood

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
     and against defendant(s)
     in the amount of $          ,

          which ☐ includes        pre–judgment interest.
                ☐ does not include pre–judgment interest.

     Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

     Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
     and against plaintiff(s)

.

     Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: in favor of Defendant Salesforce.com, Inc. and against Plaintiffs G G and Deanna Rose.

---

This action was *(check one)*:

☐ tried by a jury with Judge       presiding, and the jury has rendered a verdict.
☐ tried by Judge     without a jury and the above decision was reached.
☒ decided by Judge Andrea Wood on a motion to dismiss.

Date:  5/16/2022                     Thomas G. Bruton, Clerk of Court

                                     David Lynn , Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| G.G. (a minor), et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20-cv-02335 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| SALESFORCE.COM, INC., | ) | |
| | ) | |
| Defendant | ) | |

**ORDER**

     Plaintiffs' motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) [108] is denied. Request of Defendant Salesforce.com for judicial notice in support of opposition to motion to alter or amend the judgment under Rule 59(e) [111] is granted. Telephonic status hearing set for 8/17/2022 is stricken. See the accompanying Statement for details.

**STATEMENT**

     Defendant Salesforce.com, Inc. ("Salesforce") is the world leader in customer-relationship management ("CRM") business software and support. As alleged in the complaint, Salesforce provided its software to Backpage.com ("Backpage"), a website containing classified advertisements that was known to facilitate sex trafficking. At age 13, Plaintiff G.G. was sex trafficked via advertisements posted on Backpage. After G.G. was freed from her trafficker, she and her mother, Deanna Rose (collectively, "Plaintiffs"), filed the present lawsuit against Salesforce pursuant to 18 U.S.C. § 1595, alleging that Salesforce, through its contractual relationship with Backpage, violated federal anti-trafficking law by knowingly benefiting from and participating in a venture that it knew, or should have known, was engaged in illegal sex trafficking.

     On May 16, 2022, the Court granted Salesforce's motion to dismiss the complaint with prejudice. (Dkt. No. 105.) First, the Court found that Plaintiffs' claims were barred by Section 230 of the Communications Decency Act, as Salesforce was a provider of an "interactive computer service" as defined by § 230 and Plaintiffs' claims sought to hold Salesforce liable as a publisher of third-party content. Although Plaintiffs contended that the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") amended § 230 to exempt claims brought pursuant to § 1595, the Court held that the FOSTA exemption only applied where the defendant's conduct violated 18 U.S.C. § 1591, the criminal sex trafficking statute. Because Plaintiffs did not allege that Salesforce committed any sex trafficking violation, the Court determined that Plaintiffs' claims did not fall under the FOSTA exemption and were therefore precluded by § 230. Next, the Court concluded that Plaintiffs had failed to state a claim for beneficiary liability under § 1595. Specifically, after conducting an overview of the statutory elements of a § 1595 claim, the Court

found that Plaintiffs did not adequately allege either the knowledge or participation requirement. Now before the Court is Plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). (Dkt. No. 108.)

## I.

A motion to alter or amend a judgment under Rule 59(e) offers a party a way to "bring to the district court's attention a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A Rule 59(e) motion "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil. Co.*, 91 F.3d 872, 876 (7th Cir. 1996). But for relief to be appropriate, the motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). A manifest error of law arises where there has been a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Here, Plaintiffs assert three bases for relief under Rule 59(e).[1]

First, Plaintiffs contend that the Court manifestly erred in finding their claim to be barred by § 230. Specifically, Plaintiffs argue that the Court erred in finding that FOSTA amended § 230 to exempt civil claims under § 1595 only in circumstances in which the defendant's conduct constitutes a violation of.§ 1591. Plaintiffs' primary contention is that the Court's holding both contradicts the stated purpose of the FOSTA amendments and ignores the plain language of the statute. But Plaintiffs already raised, and the Court directly addressed, these arguments in connection with the motion to dismiss. (*See* Mem. Op. at 19–21, Dkt. No. 105 (analyzing the plain text of the statute and considering the purpose of the FOSTA amendments).) Similarly, Plaintiffs suggest that the Court "sidestep[ped] the language of FOSTA and instead look[ed] to legislative history." (Pls.' Rule 59(e) Mot. at 5, Dkt. No. 108.) Not do they misstate the Court's analysis, which first addressed the plain language of FOSTA before finding that its legislative history confirmed that interpretation, but they also omit that Plaintiffs themselves raised the issue of whether the legislative history conflicted with the plain language of the statute. (Pls.' Resp. at 23–24, Dkt. No. 66.) Despite the fact that "a Rule 59 motion is not a forum to relitigate losing arguments," that is precisely what Plaintiffs here seek to do. *Ohr ex rel. NLRB v. Latino Express, Inc.*, 776 F.3d 469, 478 (7th Cir. 2015).

Similarly, Plaintiffs maintain that the Court committed manifest error in analyzing the knowledge and participation requirements of a § 1595 claim. Again, Plaintiffs repeat arguments previously rejected by the Court in ruling on the motion to dismiss. For instance, Plaintiffs

---

[1] The parties dispute the timing and motivation of the present motion. In support of its position, Salesforce asks the Court to take judicial notice of Plaintiffs' motion to modify the protective order filed in *A.B. v. Salesforce.com*, Case No. 4:20-CV-01254, (S.D. Tex. June 8, 2022). (Dkt. No. 111.) "Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016). Accordingly, the Court grants the motion. Nevertheless, as to the merits of the present dispute, the Court notes only that the present motion was timely filed. Salesforce's speculation about Plaintiffs' motivation and litigation strategy is not relevant and was not considered in deciding this motion.

contend that the Court manifestly erred in imposing a knowledge standard for their § 1595 claims by requiring that the defendant knew (or should have known) that the venture in which it participated violated § 1591 as to the specific plaintiff. Yet that position is not new—in fact, the Court explicitly addressed it in ruling on the motion to dismiss. (*See* Mem. Op. at 29–30 (noting that "Plaintiffs suggest that this interpretation improperly imports the knowledge requirements of § 1591 into § 1595" and explaining why that is not an accurate characterization of the Court's holding).) As to the participation requirement, Plaintiffs do not dispute the legal standard adopted by the Court. Rather, they claim the Court erred in distinguishing the actions taken by Salesforce as a company from those accomplished with Salesforce's software. Throughout the course of this litigation, Plaintiffs have taken the position that software companies act through their software. This Court disagreed, as explained in the ruling on the motion to dismiss. Plaintiffs' disappointment with that ruling does not provide grounds for the Court to revisit it under Rule 59(e).

Critically, Plaintiffs point to no controlling authority that the Court failed to acknowledge or misapplied in ruling on the application of either the FOSTA exemption or § 1595 to this case. Plaintiffs themselves admit that no such precedent exists—neither the Seventh Circuit nor the Supreme Court has ruled on the interpretation of either statute.[2] Plaintiffs' argument that the Court, in reaching a different conclusion as to the meaning of the statutes than Plaintiffs proposed, disregarded the "binding" law of the statutes' plain language is an attempt to "merely [take] umbrage with the [C]ourt's ruling and rehash[] old arguments," *Oto*, 224 F.3d at 606, and ignores the Court's role in interpreting statutory text. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Finally, Plaintiffs argue that the Court failed to apply the proper standard under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs assert that the Court not only failed to draw reasonable inferences in their favor, but also improperly and uncritically adopted Salesforce's version of events in determining that Plaintiffs failed to state a claim under § 1595. Once more, Plaintiffs seek to rehash arguments that have already been raised, citing to the same allegations in support of their position. (*Compare* Pls.' Rule 59(e) Mot. at 12 (citing Third Am. Compl. ("TAC") ¶¶ 39–41, 45, Dkt. No. 62) *with* Pls.' Resp. at 25, 27 (same).) The Court has already thoroughly considered Plaintiffs' position. (*See* Mem. Op. at 32 (citing TAC ¶ 41 and describing why these allegations fail to satisfy the participation requirement of a § 1595 claim).) Simply put, Plaintiffs' disagreement with the Court's application of a standard is not enough to justify the granting of Rule 59(e) relief. *See Oto*, 224 F.3d at 606 ("A manifest error is not demonstrated by the disappointment of the losing party.").

---

[2] Indeed, no appellate court has yet ruled on this aspect of FOSTA. *See, e.g., A.M. v. Omegle.com, LLC*, No. 3:21-cv-01674-MO, 2022 WL 2713721, at *7 (D. Or. July 13, 2022) (noting that the issue of whether a claim brought under § 1595 must be predicated on a defendant's alleged violation of § 1591 for FOSTA to abrogate § 230 immunity is "far from settled" and listing cases that are awaiting ruling on appeal in the Ninth Circuit). And in its analysis of § 1595, this Court extensively (and favorably) referenced the reasoning adopted by the Eleventh Circuit in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)— as of now the only appellate court to address this question.

Inconclusion, the Court acknowledges the pain and suffering inflicted upon G.G. and other victims of sex trafficking and understands their desire to obtain recognition and restitution for all they have lost. Yet "Rule 59 is not a vehicle for arguing previously rejected motions," which is precisely what Plaintiffs seek to do in the present motion. Should Plaintiffs wish to dispute the Court's holdings further, the appropriate course would be to file an appeal. For the reasons discussed above, however, their motion is denied.

Dated: August 15, 2022

_____
Andrea R. Wood
United States District Judge

APPEAL,FUENTES,MIDP,TERMED

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.6.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:20-cv-02335
## Internal Use Only

G (a minor) et al v. Salesforce.com, Inc.
Assigned to: Honorable Andrea R. Wood
Cause: 28:1331 Fed. Question: Tort Action

Date Filed: 04/15/2020
Date Terminated: 05/16/2022
Jury Demand: Both
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**G G (a minor)**                    represented by    **Kenneth T. Fibich**
Fibich Leebron Copeland Briggs
1150 Bissonnet
Houston, TX 77005
(713) 751-0025
Email: tfibich@fibichlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara J Fendia**
Fibich Leebron Copeland Briggs
1150 Bissonnet St
Houston, TX 77005
7137510025
Email: sfendia@fibichlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Warren Wayne Harris**
Bracewell LLP
711 Louisiana
Suite 2300
Houston, TX 77002
(713) 221-1490
Email: warren.harris@bracewell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter J. Flowers**
Meyers & Flowers, LLC
225 West Wacker Drive
Suite 1515
Chicago, IL 60606

(877) 221-2511
Email: pjf@meyers-flowers.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deanna Rose**                        represented by    **Kenneth T. Fibich**
*parent and guardian of G.G.*                           (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Sara J Fendia**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Warren Wayne Harris**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Peter J. Flowers**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Salesforce.com, Inc.**               represented by    **Bradley Joseph Hamburger**
                                                        Gibson, Dunn & Crutcher LLP
                                                        333 South Grand Avenue
                                                        Los Angeles, CA 90071-3197
                                                        (213) 229-7658
                                                        Email: bhamburger@gibsondunn.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Russell Harris Falconer**
                                                        Gibson, Dunn & Crutcher LLP
                                                        2001 Ross. Ave. Suite 2100
                                                        Dallas, TX 75201
                                                        (214) 698-3170
                                                        Email: rfalconer@gibsondunn.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Veronica S. Moye**
                                                        Gibson, Dunn & Crutcher LLP
                                                        2001 Ross Avenue

Suite 2100
Dallas, TX 75201
(214) 698-3320
Email: VMoye@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew Patrick Legrand**
Gibson Dunn & Crutcher Llp
2001 Ross Avenue
Suite 2100
Dallas, TX 75201
(214) 698-3100
Email: ALegrand@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Christopher Roy Jones**
Gibson Dunn & Crutcher LLP
555 Mission St.
#3000
San Francisco, CA 94105
(303) 319-6055
Email: crjones@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristin Andrea Linsley**
Gibson, Dunn & Crutcher LLP
Suite 3000
555 Mission Street
San Francisco, CA 94105
(415) 393-8395
Email: KLinsley@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lucas Thor Rael**
Riley Safer Holmes & Cancila LLP
70 W. Madison Street
Suite 2900
Chicago, IL 60602
(312) 471-8700
Email: lrael@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Patricia Brown Holmes**
Riley Safer Holmes & Cancila LLP
70 West Madison St
Suite 2900

Chicago, IL 60602
(312) 471-8745
Email: pholmes@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Backpage.com, LLC**
*TERMINATED: 02/23/2022*

represented by **Mark Castillo**
Curtis Castillo Pc
901 Main Street, Suite 6515
Dallas, TX 75202
(214) 752-2222
Email: mcastillo@curtislaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Barry A. Spevack**
Monico & Spevack
53 West Jackson Street
Suite 1315
Chicago, IL 60604
United Sta
(312) 782-8500
Email: bspevack@monicolaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2020 | 3 | ORDER: Second Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20-0012, entered on March 17, 2020, and General Order 20-0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance. Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice (rc, ) (Entered: 04/15/2020) |
| 04/15/2020 | 1 | COMPLAINT filed by G G (a minor), Deanna Rose; Jury Demand. Filing fee $ 400, receipt number 0752-16934400. (Attachments: # 1 Civil Cover Sheet) (Flowers, Peter) (Entered: 04/15/2020) |
| 04/15/2020 | 2 | ATTORNEY Appearance for Plaintiffs G G (a minor), Deanna Rose by Peter J. Flowers (Flowers, Peter) (Entered: 04/15/2020) |
| 04/15/2020 | | CASE ASSIGNED to the Honorable Andrea R. Wood. Designated as Magistrate Judge the Honorable Gabriel A. Fuentes. Case assignment: Random assignment. (rc, ) (Entered: 04/15/2020) |
| 04/16/2020 | 4 | MINUTE entry before the Honorable Andrea R. Wood: Initial status hearing set for 7/1/2020 at 9:00 AM. The parties are directed to meet and conduct a planning conference pursuant to Federal Rule of Civil Procedure 26(f). At least seven days before the initial status hearing, the parties shall file a joint written status report, not to exceed five pages in length. The initial status report shall provide the |

| | | information described on the Court's website at www.ilnd.uscourts.gov under District Judges, Judge Andrea R. Wood, Initial Status Conference. Mailed notice. (dal, ) (Entered: 04/16/2020) |
|---|---|---|
| 04/16/2020 | | SUMMONS Issued as to Defendant Salesforce.com, Inc. (ng, ) (Entered: 04/16/2020) |
| 04/16/2020 | 5 | NOTICE TO THE PARTIES - The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in this Notice which includes a link to the (MIDP) Standing Order and a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the following documents (Notice of Mandatory Initial Discovery and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third-Party Complaint is served. (aee, ) (Entered: 04/16/2020) |
| 04/23/2020 | 6 | AFFIDAVIT of Service filed by Plaintiffs G G (a minor), Deanna Rose regarding Summons & Complaint served on Def. Salesforce.com, Inc. c/o CT Corporation Service & Derrick Hackett, Employee Authorized to Accept on 04/20/2020 (Flowers, Peter) (Entered: 04/23/2020) |
| 04/24/2020 | 7 | ATTORNEY Appearance for Defendant Salesforce.com, Inc. by Patricia Brown Holmes (Holmes, Patricia) (Entered: 04/24/2020) |
| 04/24/2020 | 8 | ATTORNEY Appearance for Defendant Salesforce.com, Inc. by Lucas Thor Rael (Rael, Lucas) (Entered: 04/24/2020) |
| 04/24/2020 | 9 | MOTION by Defendant Salesforce.com, Inc. to transfer case (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Holmes, Patricia) (Entered: 04/24/2020) |
| 04/24/2020 | 10 | CORPORATE DISCLOSURE STATEMENT by Salesforce.com, Inc. (Holmes, Patricia) |
| 04/24/2020 | 12 | ORDER Third Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket9, ) (Entered: 04/27/2020) |
| 04/27/2020 | 11 | MINUTE entry before the Honorable Andrea R. Wood: The Court sets the following briefing schedule on Defendant's motion to transfer 9 : Plaintiff shall respond by 5/18/2020 and Defendant shall reply by 5/29/2020. The Court will rule electronically based on the briefing. Please be advised that this schedule takes into account Third Amended General Order 20-0012 dated 4/24/2020 and thus is not subject to the automatic extension therein. The parties may request modification of the briefing schedule by motion or by e-mail to Courtroom Deputy David Lynn at david_lynn@ilnd.uscourts.gov. E-mails must be copied to all counsel of record and the parties must confer and attempt to reach agreement |

| | | |
|---|---|---|
| | | before submitting a request to the Court. Mailed notice. (dal, ) (Entered: 04/27/2020) |
| 05/04/2020 | 13 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-16984996. (Hamburger, Bradley) (Entered: 05/04/2020) |
| 05/04/2020 | 14 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 13 is granted. Mailed notice. (dal, ) (Entered: 05/04/2020) |
| 05/05/2020 | 15 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-16989617. (Linsley, Kristin) (Entered: 05/05/2020) |
| 05/05/2020 | 16 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-16989753. (Jones, Christopher) (Entered: 05/05/2020) |
| 05/06/2020 | 17 | MINUTE entry before the Honorable Andrea R. Wood: Motions by counsel for leave to appear pro hac vice 15 and 16 are granted. Mailed notice. (dal, ) (Entered: 05/06/2020) |
| 05/07/2020 | 18 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-16993746. (Falconer, Russell) (Entered: 05/07/2020) |
| 05/07/2020 | 19 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 18 is granted. Mailed notice. (dal, ) (Entered: 05/07/2020) |
| 05/15/2020 | 20 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17014867. (Fendia, Sara) (Entered: 05/15/2020) |
| 05/15/2020 | 21 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17015144. (Fibich, Kenneth) (Entered: 05/15/2020) |
| 05/15/2020 | 22 | MOTION by Plaintiff G G (a minor) to amend/correct MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17015144. 21 (Fibich, Kenneth) (Entered: 05/15/2020) |
| 05/15/2020 | 23 | MINUTE entry before the Honorable Andrea R. Wood: Motions by counsel for leave to appear pro hac vice 20 and 22 are granted. Motion to appear pro hac vice 21 is terminated. Mailed notice. (dal, ) (Entered: 05/15/2020) |
| 05/18/2020 | 24 | RESPONSE by G G (a minor), Deanna Rose to MOTION by Defendant Salesforce.com, Inc. to transfer case 9 (Flowers, Peter) (Entered: 05/18/2020) |
| 05/21/2020 | 25 | AMENDED complaint by G G (a minor), Deanna Rose against Salesforce.com, Inc. (Fibich, Kenneth) (Entered: 05/21/2020) |
| 05/26/2020 | 26 | ORDER ORDER Fourth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non-emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket10, ) (Entered: 05/27/2020) |
| 05/29/2020 | 27 | MEMORANDUM by Salesforce.com, Inc. in support of motion to transfer case 9 (Holmes, Patricia) (Entered: 05/29/2020) |

| 06/24/2020 | 28 | STATUS Report *Joint Initial Status Report* by G G (a minor), Deanna Rose (Fibich, Kenneth) (Entered: 06/24/2020) |
|---|---|---|
| 06/26/2020 | 29 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17149418. (Lewis, Veronica) (Entered: 06/26/2020) |
| 06/29/2020 | 30 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 29 is granted. Mailed notice. (dal, ) (Entered: 06/29/2020) |
| 06/29/2020 | 31 | ATTORNEY Appearance for Defendant Salesforce.com, Inc. by Andrew Patrick Legrand (Legrand, Andrew) (Entered: 06/29/2020) |
| 06/30/2020 | 32 | MINUTE entry before the Honorable Andrea R. Wood: The status hearing set for 7/1/2020 will proceed by telephone conference. The Court specifically requests that the parties be prepared to address questions regarding the pending motion to transfer 9 . If counsel most familiar with that motion are unable to participate in tomorrow's hearing, the parties shall notify the courtroom deputy as soon as possible so that the hearing may be rescheduled to time when knowledgeable counsel are available. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (dal, ) (Entered: 06/30/2020) |
| 06/30/2020 | 33 | MOTION by Defendant Salesforce.com, Inc. for leave to file excess pages *Joint Motion to Extend Page Limits For Parties Motion to Dismiss Briefing* (Holmes, Patricia) (Entered: 06/30/2020) |
| 07/01/2020 | 34 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held and continued 10/15/2020 at 9:15 AM. The Court sets the following briefing schedule on Defendant's anticipated motion to dismiss: Defendant will file its motion to dismiss by 7/6/2020, Plaintiff shall file her response by 8/5/2020, and Defendant shall file a reply by 8/26/2020. The parteis' joint motion to extend page limits for parties' motion to dismiss briefing 33 is granted. Defendant's brief in support of its motion to dismiss and Plaintiff's brief in response to Defendant's motion to dismiss shall not exceed 25 pages. The Court takes Defendant's motion to transfer 9 under advisement. Mailed notice. (dal, ) (Entered: 07/01/2020) |
| 07/06/2020 | 35 | TRANSCRIPT OF PROCEEDINGS held on 07/01/20 before the Honorable Andrea R. Wood. Order Number: 38736, 38745. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the |

| | | |
|---|---|---|
| | | Availability of Transcripts of Court Proceedings.</P> Redaction Request due 7/27/2020. Redacted Transcript Deadline set for 8/6/2020. Release of Transcript Restriction set for 10/5/2020. (Tannehill, Brenda) (Entered: 07/06/2020) |
| 07/06/2020 | 36 | Correspondence by Salesforce.com, Inc. (Holmes, Patricia) (Entered: 07/06/2020) |
| 07/09/2020 | 37 | MOTION by Defendant Salesforce.com, Inc. for leave to file *Second Amended Complaint and Set Briefing Schedule on Motion to Dismiss* (Holmes, Patricia) (Entered: 07/09/2020) |
| 07/10/2020 | 38 | ORDER Fifth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in-person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in-court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk9, Docket) (Entered: 07/10/2020) |
| 07/10/2020 | 39 | *PLAINTIFFS' SECOND AMENDED COMPLAINT* AMENDED complaint by G G (a minor), Deanna Rose against G G (a minor), Deanna Rose (Fibich, Kenneth) (Entered: 07/10/2020) |
| 07/17/2020 | 40 | MOTION by Defendant Salesforce.com, Inc. to dismiss *second amended complaint* (Holmes, Patricia) (Entered: 07/17/2020) |
| 07/17/2020 | 41 | DECLARATION of Kristin A. Linsley regarding motion to dismiss 40 *in support of* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Holmes, Patricia) (Entered: 07/17/2020) |
| 07/17/2020 | 42 | Request for Judicial Notice in Support of Motion to Dismiss Second Amended Complaint by Salesforce.com, Inc. (Holmes, Patricia) (Entered: 07/17/2020) |
| 07/17/2020 | 43 | Notice of Constitutional Question by Salesforce.com, Inc. (Holmes, Patricia) (Entered: 07/17/2020) |
| 07/21/2020 | 44 | ORDER Signed by the Honorable Andrea R. Wood on 7/21/2020: Defendant's motion for reassignment 9 is denied. Plaintiffs' and Defendant's joint motion for leave to file a second amended complaint and to set a briefing schedule on Defendant's anticipated motion to dismiss 37 is granted. Plaintiffs shall respond to Defendant's motion to dismiss the second amended complaint 40 by 8/31/2020 and Defendant shall reply thereto by 9/21/2020. See the accompanying Statement for details. Mailed notice. (dal, ) (Entered: 07/21/2020) |
| 08/27/2020 | 45 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-17369484. (Harris, Warren) (Entered: 08/27/2020) |
| 08/28/2020 | 46 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 45 is granted. Mailed notice (dal, ) (Entered: 08/28/2020) |
| 08/31/2020 | 47 | RESPONSE by G G (a minor), Deanna Rosein Opposition to MOTION by Defendant Salesforce.com, Inc. to dismiss *second amended complaint* 40 (Harris, Warren) (Entered: 08/31/2020) |

| | | |
|---|---|---|
| 09/21/2020 | 48 | REPLY by Defendant Salesforce.com, Inc. to motion to dismiss 40 *in support of* (Holmes, Patricia) (Entered: 09/21/2020) |
| 10/15/2020 | 49 | MINUTE entry before the Honorable Andrea R. Wood: The status hearing set for 10/15/2020 is stricken and will be reset by separate order. Mailed notice (dal, ) (Entered: 10/15/2020) |
| 10/20/2020 | 50 | Plaintiff's Motion for Leave to File Supplemental Authority by G G (a minor), Deanna Rose (Attachments: # 1 Text of Proposed Order Order)(Fibich, Kenneth) Modified on 10/21/2020 (rp, ). (Entered: 10/20/2020) |
| 10/20/2020 | 51 | MOTION by Plaintiffs G G (a minor), Deanna Rose to amend/correct (Attachments: # 1 Exhibit Exhibit A, # 2 Text of Proposed Order Order)(Fibich, Kenneth) (Entered: 10/20/2020) |
| 10/21/2020 | 52 | RESPONSE by Salesforce.com, Inc.in Opposition to MOTION for leave to file 50 *supplemental authority* (Holmes, Patricia) (Entered: 10/21/2020) |
| 10/21/2020 | 53 | Notice of Withdrawal of Constitutional Question by Salesforce.com, Inc. (Holmes, Patricia) (Entered: 10/21/2020) |
| 02/09/2021 | 54 | Notice of Supplemental Authority by Salesforce.com, Inc. (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: 02/09/2021) |
| 03/24/2021 | 55 | MOTION by Plaintiffs G G (a minor), Deanna Rose for leave to file *Supplemental Authority* (Attachments: # 1 Exhibit)(Fendia, Sara) (Entered: 03/24/2021) |
| 08/12/2021 | 56 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 9/22/2021 at 10:15 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 08/12/2021) |
| 09/16/2021 | 57 | Notice of Supplemental Authority by Salesforce.com, Inc. (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: 09/16/2021) |
| 09/22/2021 | 58 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 9/22/2021. For the reasons stated on the record, Plaintiffs' motions for leave to file supplemental authority at docket entries 51 and 55 are granted. The Court will consider the supplemental authority in connection with its ruling on the motion to dismiss. Plaintiff's motion for leave at docket entry 50 is terminated as moot in light of the amended motion 51 . Plaintiff's request for oral argument is taken under advisement. The parties shall meet and confer in attempt to come to an agreement regarding the filing of an amended complaint prior to the next status hearing. Telephonic status hearing set for 9/29/2021 at 1:00 PM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is |

| | | |
|---|---|---|
| | | (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 09/22/2021) |
| 09/24/2021 | 59 | TRANSCRIPT OF PROCEEDINGS held on September 22, 2021 before the Honorable Andrea R. Wood. Order Number: 41702. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 10/15/2021. Redacted Transcript Deadline set for 10/25/2021. Release of Transcript Restriction set for 12/23/2021. (Tannehill, Brenda) (Entered: 09/24/2021) |
| 09/29/2021 | 60 | MOTION by Plaintiffs G G (a minor), Deanna Rose for order *Joint Motion for Leave to file Third Amended Complaint* (Fibich, Kenneth) (Entered: 09/29/2021) |
| 09/29/2021 | 61 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 9/29/2021. The parties' joint motion for leave to file third amended complaint and to set a schedule for supplemental motion to dismiss briefing 60 is granted as follows. Plaintiffs are granted leave to file a third amended complaint which encompasses new issues, as well as those in the second amended complaint, by 10/4/2021. In light of the third amended complaint, the previously filed motion to dismiss the second amended complaint 40 is terminated as moot. Defendant shall file a motion to dismiss the third amended complaint by 10/18/2021. Defendant shall file a new moving document specifically directed to the third amended complaint. Defendant may adopt its briefing in support of its motion to dismiss the second amended complaint by reference in its motion to dismiss the third amended complaint in addition to filing a supplemental brief along with the new motion. Plaintiffs shall file a response by 11/1/2021. Plaintiff may adopt its briefing in opposition to Defendant's motion to dismiss the second amended complaint by reference in its response brief. Defendant shall file a reply by 11/8/2021. Defendant may adopt its reply briefing in support of its motion to dismiss the second amended complaint by reference in its reply brief. Defendant's opening brief and Plaintiffs' response brief shall be limited to a total of 35 pages (including any pages adopted from previous briefs). Defendant's reply brief is limited to 20 pages (including pages adopted from its previous brief). Status hearing/oral argument set for 11/30/2021 at 11:00 AM. Mailed notice (dal, ) (Entered: 09/29/2021) |
| 10/04/2021 | 62 | *PLAINTIFFS' THIRD AMENDED COMPLAINT* AMENDED complaint by G G (a minor), Deanna Rose against All Defendants (Fibich, Kenneth) (Entered: 10/04/2021) |

| | | |
|---|---|---|
| 10/18/2021 | 63 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Salesforce.com, Inc. *re: Plaintiffs' Third Amended Complaint* (Holmes, Patricia) (Entered: 10/18/2021) |
| 10/18/2021 | 64 | DECLARATION of Kristin A. Linsley regarding Motion to Dismiss for Failure to State a Claim 63 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Holmes, Patricia) (Entered: 10/18/2021) |
| 10/18/2021 | 65 | Request for Judicial Notice in Support of Motion to Dismiss Third Amended Complaint 63 by Salesforce.com, Inc. (Holmes, Patricia) (Entered: 10/18/2021) |
| 11/01/2021 | 66 | RESPONSE by G G (a minor), Deanna Rosein Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Salesforce.com, Inc. *re: Plaintiffs' Third Amended Complaint* 63 (Harris, Warren) (Entered: 11/01/2021) |
| 11/05/2021 | 67 | TRANSCRIPT OF PROCEEDINGS held on September 29, 2021 before the Honorable Andrea R. Wood. Order Number: 41982. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 11/26/2021. Redacted Transcript Deadline set for 12/6/2021. Release of Transcript Restriction set for 2/3/2022. (Tannehill, Brenda) (Entered: 11/05/2021) |
| 11/08/2021 | 68 | OBJECTIONS *Plaintiff's Objections to Request of Defendant Salesforce.com for Judicial Notice in Support of Motion to Dismiss* (Attachments: # 1 Text of Proposed Order)(Fendia, Sara) (Entered: 11/08/2021) |
| 11/08/2021 | 69 | REPLY by Defendant Salesforce.com, Inc. *in support of Motion to Dismiss* 63 (Holmes, Patricia) (Entered: 11/08/2021) |
| 11/10/2021 | 70 | Correspondence to Honorable Judge by G G (a minor), Deanna Rose (Fendia, Sara) (Entered: 11/10/2021) |
| 11/10/2021 | 71 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs have filed a letter withdrawing their request for oral argument to be held in person on 11/30/2021 70 . In light of the letter, the Court will hold a status hearing and hear oral argument on Defendants' motion to dismiss 63 at 11:00 AM on 11/30/2021 by videoconference. To ensure public access to court proceedings, members of the public and media may call in to listen to remote hearings. The call-in number is (650)-479-3207 and the meeting ID is 180 813 1170##. Counsel of record will receive an email prior to the start of the hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by |

| | | |
|---|---|---|
| | | the Court. Mailed notice (dal, ) (Entered: 11/10/2021) |
| 11/15/2021 | [72](#) | REPLY by Defendant Salesforce.com, Inc. *in Support of Request for Judicial Notice [65](#)* (Holmes, Patricia) (Entered: 11/15/2021) |
| 11/23/2021 | [73](#) | NOTICE OF SUPPLEMENTAL AUTHORITY by G G (a minor), Deanna Rose (Attachments: # [1](#) Exhibit, # [2](#) Exhibit)(Fendia, Sara) (Entered: 11/23/2021) |
| 11/23/2021 | [74](#) | PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY by G G (a minor), Deanna Rose (Attachments: # [1](#) Exhibit)(Fendia, Sara) (Entered: 11/23/2021) |
| 11/23/2021 | [75](#) | PLAINTIFF'S MOTION TO STAY LITIGATION by G G (a minor), Deanna Rose (Attachments: # [1](#) Exhibit)(Fendia, Sara) (Entered: 11/23/2021) |
| 11/24/2021 | [76](#) | MINUTE entry before the Honorable Andrea R. Wood: Defendant shall file any response to Plaintiff's motion to stay litigation [75](#) by 11/26/2021. The motion is set for a telephonic hearing at 9:00 AM on 11/29/2021. To ensure public access to court proceedings, members of the public and media may call in to listen to remote hearings. The call-in number is (650)-479-3207 and the meeting ID is 180 813 1170##. Counsel of record will receive an email prior to the start of the hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (aw,) (Entered: 11/24/2021) |
| 11/26/2021 | [77](#) | RESPONSE by Defendant Salesforce.com, Inc. *to Plaintiffs' Motion to Stay Litigation [75](#)* (Holmes, Patricia) (Entered: 11/26/2021) |
| 11/29/2021 | [78](#) | MINUTE entry before the Honorable Andrea R. Wood: The call-in information for the telephonic motion hearing set for 11/29/2021 is modified as follows. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 11/29/2021) |
| 11/29/2021 | [79](#) | MINUTE entry before the Honorable Andrea R. Wood: Telephonic motion hearing held on 11/29/2021. For the reasons stated on the record, Plaintiff's motion to stay litigation [75](#) is denied. Oral argument remains set for 11/30/2021 by video conference. Mailed notice (dal, ) (Entered: 11/30/2021) |
| 11/30/2021 | 🔒 | (Court only) ***Deadlines and hearings Terminated. (dal, ) (Entered: 11/30/2021) |
| 11/30/2021 | [80](#) | Request of issuing a summon by G G (a minor), Deanna Rose (Fendia, Sara) (Entered: 11/30/2021) |

| | | | |
|---|---|---|---|
| 11/30/2021 | | 82 | MINUTE entry before the Honorable Andrea R. Wood: Oral argument and status hearing held on 11/30/2021 by video conference. Defendant's motion to dismiss third amended complaint 63 is taken under advisement on the current record. Telephonic status hearing set for 1/20/2022 at 10:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 12/01/2021) |
| 12/01/2021 | | 81 | Correspondence to Honorable Judge by G G (a minor), Deanna Rose (Fendia, Sara) (Entered: 12/01/2021) |
| 12/02/2021 | | 83 | TRANSCRIPT OF PROCEEDINGS held on November 29, 2021 before the Honorable Andrea R. Wood. Order Number: 42134. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 12/23/2021. Redacted Transcript Deadline set for 1/3/2022. Release of Transcript Restriction set for 3/2/2022. (Tannehill, Brenda) (Entered: 12/02/2021) |
| 12/02/2021 | | 84 | TRANSCRIPT OF PROCEEDINGS held on November 30, 2021 before the Honorable Andrea R. Wood. Order Number: 42134. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 12/23/2021. Redacted Transcript Deadline set for 1/3/2022. Release of Transcript Restriction set for 3/2/2022. (Tannehill, Brenda) (Entered: 12/02/2021) |
| 12/02/2021 | | 85 | AMENDED amended complaint 62 *CORRECTED THIRD AMENDED COMPLAINT [CORRECTED FOR CAPTION ONLY]* (Fendia, Sara) (Entered: 12/02/2021) |
| 12/02/2021 | | 86 | Notice of Supplemental Authority by Salesforce.com, Inc. *in support of Motion to Dismiss* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Holmes, Patricia) (Entered: 12/02/2021) |

| 12/03/2021 | | SUMMONS Issued as to Defendant Backpage.com, LLC (jf, ) (Entered: 12/03/2021) |
|---|---|---|
| 12/06/2021 | 87 | RESPONSE by Plaintiffs G G (a minor), Deanna Rose *PLAINTIFF'S RESPONSE IN OPPOSITION TO SALESFORCE'S ALLEGED NOTICE OF SUPPLEMENTAL AUTHORITY* (Fendia, Sara) (Entered: 12/06/2021) |
| 12/10/2021 | 88 | SUMMONS Returned Executed by G G (a minor), Deanna Rose as to All Defendants. (Fendia, Sara) (Entered: 12/10/2021) |
| 12/14/2021 | 89 | NOTICE of Supplemental Authority by G G (a minor), Deanna Rose (Fendia, Sara) (Docket Text Modified by Clerk's Office on 12/15/2021) (jg, ). (Entered: 12/14/2021) |
| 12/30/2021 | 90 | ATTORNEY Appearance for Defendant Backpage.com, LLC by Barry A. Spevack (Spevack, Barry) (Entered: 12/30/2021) |
| 12/30/2021 | 91 | MOTION by Defendant Backpage.com, LLC for extension of time *to Answer or Otherwise Plead (Unopposed)* (Spevack, Barry) (Entered: 12/30/2021) |
| 12/30/2021 | 92 | Notice of Supplemental Authority by Salesforce.com, Inc. *in support of Motion to Dismiss* (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: 12/30/2021) |
| 12/30/2021 | 93 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Backpage.com, LLC (Spevack, Barry) (Entered: 12/30/2021) |
| 12/30/2021 | 94 | Notice of Supplemental Authority by Salesforce.com, Inc. *in support of Motion to Dismiss* (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: 12/30/2021) |
| 01/04/2022 | 95 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19019167. (Castillo, Mark) (Entered: 01/04/2022) |
| 01/05/2022 | 96 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 95 is granted. Mailed notice (dal, ) (Entered: 01/05/2022) |
| 01/06/2022 | 97 | MINUTE entry before the Honorable Andrea R. Wood: Defendant's unopposed motion for extension of time to answer or otherwise plead 91 is granted. Defendant shall answer or otherwise respond to Plaintiff's amended complaint by 1/31/2022. Mailed notice (dal, ) (Entered: 01/06/2022) |
| 01/19/2022 | 98 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 1/19/2022 is stricken and reset for 2/23/2022 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 01/19/2022) |
| 01/21/2022 | 99 | Notice of Supplemental Authority by Salesforce.com, Inc. *in support of Motion to Dismiss 63* (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: |

| | | |
|---|---|---|
| | | 01/21/2022) |
| 02/01/2022 | 100 | NOTICE of Voluntary Dismissal by All Plaintiffs (Fendia, Sara) (Entered: 02/01/2022) |
| 02/23/2022 | 101 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 2/23/2022. Plaintiff having filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) 100 the claims against Defendant Backpage.com, LLC are dismissed without prejudice. Telephonic status hearing set for 4/8/2022 at 10:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 02/24/2022) |
| 04/07/2022 | 102 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 4/8/2022 is stricken and reset for 5/5/2022 at 10:45 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 04/07/2022) |
| 05/05/2022 | 103 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 5/5/2022. The Court will issue a written ruling on Defendant's motion to dismiss and set a further status date as necessary by separate order. Mailed notice (dal, ) (Entered: 05/06/2022) |
| 05/16/2022 | 104 | MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompany Memorandum Opinion and Order, Defendant's motion to dismiss the third amended complaint 63 is granted. The third amended complaint is dismissed with prejudice. The Clerk is directed to enter judgment in favor of Defendant. Civil case terminated. Mailed notice (dal, ) (Entered: 05/16/2022) |
| 05/16/2022 | 105 | MEMORANDUM Opinion and Order Signed by the Honorable Andrea R. Wood on 5/16/2022. Mailed notice(dal, ) (Entered: 05/16/2022) |
| 05/16/2022 | 106 | ENTERED JUDGMENT Signed by the Clerk on 5/16/2022. Mailed notice (dal, ) (Entered: 05/16/2022) |
| 06/10/2022 | 107 | NOTICE by Salesforce.com, Inc. *Notice of Change of Party Name* (Holmes, Patricia) (Entered: 06/10/2022) |

| 06/13/2022 | 108 | MOTION by Plaintiffs G G (a minor), Deanna Rose to alter judgment *or Amend Judgment Under Rule 59e* (Harris, Warren) (Entered: 06/13/2022) |
|---|---|---|
| 06/21/2022 | 109 | RESPONSE by Defendant Salesforce.com, Inc. to motion to alter judgment 108 (Holmes, Patricia) (Entered: 06/21/2022) |
| 06/21/2022 | 110 | DECLARATION of Kristin A. Linsley regarding Response 109 (Attachments: # 1 Exhibit A)(Holmes, Patricia) (Entered: 06/21/2022) |
| 06/21/2022 | 111 | MOTION by Defendant Salesforce.com, Inc.Request for Judicial Notice *in Support of Opposition to Motion to Alter Or Amend the Judgment* (Holmes, Patricia) (Entered: 06/21/2022) |
| 06/23/2022 | 112 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, the Court sets the following briefing schedule for Plaintiffs' Motion to Alter or Amend the Judgment Under Rule 59(e) 108 : Defendant's response shall be filed by 6/21/2022. Plaintiffs' reply shall be filed by 6/29/2022. The Court deems Defendant's response filed on 6/21/2022 timely filed. Telephonic status hearing set for 8/17/2022 at 9:15 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 06/23/2022) |
| 06/24/2022 | 113 | RESPONSE by G G (a minor)in Support of MOTION by Plaintiffs G G (a minor), Deanna Rose to alter judgment *or Amend Judgment Under Rule 59e* 108 (Harris, Warren) (Entered: 06/24/2022) |
| 08/15/2022 | 114 | ORDER: Plaintiffs' motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) 108 is denied. Request of Defendant Salesforce.com for judicial notice in support of opposition to motion to alter or amend the judgment under Rule 59(e) 111 is granted. Telephonic status hearing set for 8/17/2022 is stricken. See the accompanying Statement for details. Signed by the Honorable Andrea R. Wood on 8/15/2022. Mailed notice (lma, ) (Entered: 08/15/2022) |
| 09/13/2022 | 115 | NOTICE of appeal by G G (a minor), Deanna Rose regarding orders 106 , 105 , 114 Filing fee $ 505, receipt number AILNDC-19835323. Receipt number: n (Harris, Warren) (Entered: 09/13/2022) |
| 09/15/2022 | 116 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 115 (jg, ) (Entered: 09/15/2022) |