THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G.G. (a minor), et al.[1], | ) | |
| | ) | |
| Plaintiffs, | ) | No. 20 C 2335 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| SALESFORCE.COM, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Defendant Salesforce.com, Inc. ("Salesforce") moves to stay proceedings in these consolidated cases under Section 1595(b)(1) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). For the reasons below, the Court grants the Motions [254], [347][2].

**BACKGROUND**

The Court presumes the parties' familiarity with the factual and procedural backgrounds of the consolidated cases and will only discuss what is pertinent to the present Motions. Plaintiffs allege that they were victims of sex trafficking and that their traffickers advertised them on the now-defunct Backpage.com ("Backpage"). *G.G. v. Salesforce, Inc.* No. 20 C 02335, Dkt. 235 ¶ 70 ("*G.G.* Compl."); *A.I.R. et al. v. Salesforce, Inc.*, No. 25 C 06867, Dkt. ¶¶ 27-28, 133-149. (*A.I.R.* Compl.[3]). They further allege that Salesforce played a pivotal role in the success and growth of

---

[1] On August 27, 2025, this matter was consolidated with the following cases: *A.I.R. et al. v. Salesforce, Inc.*, *No.* 25 C 6867; *J.M.M. et al. v. Salesforce, Inc.*, *No.* 25 C 6868; *K.B. et al. v. Salesforce, Inc.*, *No.* 25 C 6869; *N.R.J. et al. v. Salesforce, Inc.*, *Salesforce, Inc.*, *No.* 25 C 6870; *No. M.K. et al. v. Salesforce, Inc.*, *No.* 25 C 6871; and *N.A.M. et al. v. Salesforce, Inc.*, *Inc.*, *No.* 25 C 6872. (Dkt. 268).
[2] Plaintiffs G.G. and her mother moved for a stay on August 8, 2025. (Dkt. 254). After consolidation, Plaintiffs in the six additional cases filed a nearly identical Motion. (Dkt. 347). The Court will consider them together.
[3] Plaintiffs in the six newly consolidated cases filed identical complaints. For expediency, the Court only references the Complaint in *A.I.R. et al. v. Salesforce, Inc.*, No. 25 C 6869.

1

Backpage. *G.G.* Compl. ¶¶ 244-266; *A.I.R.* Compl. ¶ 128. Plaintiffs claim that Salesforce violated Section 1595(a) of the TVPRA, 18 U.S.C. § 1595(a), by knowingly benefiting from and participating in a venture that it knew, or should have known, was engaged in illegal sex trafficking. *G.G.* Compl. ¶¶ 224-50; *A.I.R.* Compl. ¶¶ 150-57. Salesforce now moves for a stay of proceedings during the pendency of related, ongoing criminal proceedings under the TVPRA's mandatory stay provision, 18 U.S.C. § 1595(b)(1). (Dkt. 254 at 7-11); (Dkt. 347 at 9-14). In the alternative, Salesforce seeks a stay under 18 U.S.C. § 3509(k), which provides that a civil cause of action seeking money damages for injuries incurred while the victim was a minor shall be stayed if "a criminal action is pending which arises out of the same occurrence and in which the child is the victim." (Dkt. 254 at 12); (Dkt. 347 at 15).

## LEGAL STANDARD

Under § 1595(b)(1) of the TVPRA, "[a]ny civil action filed under [§ 1595(a)] shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). The provision contains three elements: "(1) a criminal action or investigation is pending; (2) the criminal action arises out of the same occurrence as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1098 (9th Cir. 2024) (internal citations omitted). If all three elements are met, a stay is mandatory. *Id.*; *see also Doe v. Mindgeek USA Inc.*, 2021 WL 6618628, at *4 (C.D. Cal. Dec. 28, 2021) (where defendants present sufficient evidence that a criminal action arises out of the same occurrence in which the claimant is the victim, the Court "must follow the mandatory language of § 1595(b) and stay the case until the criminal action is resolved); *Sharma v. Balwinder*, 2021 WL 4865281, at *2 (N.D. Cal. Sept. 29, 2021) (if the elements of § 1595(b)(1) are satisfied, "the plain language of the

2

TVPRA mandates a stay of the present civil action pending resolution of the criminal proceedings").

## DISCUSSION

Salesforce argues that mandatory stays under § 1595(b)(1) are required in the consolidated cases because there are pending criminal cases involving the same sex trafficking scheme that Plaintiffs were victim to. (Dkt. 254 at 7-11); (Dkt. 347 at 9-14). Plaintiffs oppose a stay, arguing that (1) the criminal matters do not arise out of the same occurrence as the civil litigation and (2) Plaintiffs are not the victims of the criminal actions. (Dkt. 258 at 7-8); (Dkt. 311 at 3-6). When faced with nearly identical motions brought by Salesforce in substantially similar cases, courts have rejected these arguments and granted motions to stay under § 1595(b)(1). *See A.B. v. Salesforce, Inc.*, 2025 WL 3013135 (S.D. Tex. Oct. 28, 2025); *A.S. v. Salesforce, Inc., et al.*, No. 3:23 C 01039, Dkt. 179 (N.D. Tex. Oct. 21, 2025); *S.M.A. v. Salesforce, Inc., et al.*, No. 3:23 C 00915, Dkt. 105 (N.D. Tex. Oct. 21, 2025). The Court sees no reason to depart from these rulings.

I. **Pending Criminal Actions**

Salesforce offers forth two criminal proceedings as the bases for the mandatory stay it requests: *United States v. Lacey*, No. 2:18 CR 0422 (D. Ariz.) (the "Lacey Action") and *People v. Ferrer, et al.*, No. 16FE024013 (Sacramento Sup. Ct.) (the "Ferrer Action")[4]. (Dkt. 254 at 7-9); (Dkt. 347 at 9-10).

    a. **The Lacey Action**

---

[4] In the initial Motion to Stay filed by Plaintiffs G.G. and her mother, Salesforce included four other then-pending criminal actions: *United States v. Backpage.com*, No. 2:18-CR-00465 (D. Ariz.); *United States v. Hyer*, No. CR-18-00422 (D. Ariz.); *United States v. Ferrer*, No. 2:18-CR-00464 (D. Ariz); *People v. Lacey*, No. 16FE024013 (Sacramento Sup. Ct.). (Dkt. 254 at 1, 9). Since Salesforce only references the Lacey Action and the Ferrer Action in its more recently filed Motion, the Court will only analyze those actions in determining the applicability of the requested stay.

3

Federal criminal charges were brought against Michael Lacey, one of the founders of Backpage, and other Backpage officers and directors in the District of Arizona. *Lacey*, No. 2:18 CR 00422, Dkt. 230. The Superseding Indictment (the "Indictment") describes how Backpage facilitated an online sex trafficking scheme and profited from this scheme through, in part, its sale of advertisements to human traffickers. *Id.* ¶¶ 1-194. Lacey and the other defendants are accused of being aware that Backpage was used for prostitution and sex trafficking and of taking steps to "intentionally facilitate that illegal activity." *Id.* ¶ 9.

The Indictment charges Lacey and the other defendants with one count of conspiracy to facilitate prostitution, 50 counts of facilitating prostitution, and 49 counts of various forms of money-laundering. *Id.* ¶¶ 195-211. Lacey is the only defendant for whom charges remain pending. He was found not guilty on one money laundering count and guilty on another money laundering count. *Lacey*, No. 2:18 CR 00422, Dkts. 2174, 2084. For the remaining 84 counts, including those for conspiring to facilitate prostitution and facilitating prostitution, the jury did not reach a verdict, and the Court declared a mistrial. *Lacey*, No. 2:18 CR 00422, Dkt. 2035. Lacey appealed his one conviction to the Ninth Circuit, and the appeal remains pending. *Lacey*, No. 2:18 CR 00422, Dkt. 21; *United States v. Michael Lacey*, No. 24-5376 (9th Cir. 2024), Dkt. 106 (granting extension of time to file consolidated answering brief until February 23, 2026). The Government indicated its intent to retry Lacey on the remaining 84 counts following resolution of the pending appeal. *Lacey*, No. 2:18 CR 00422, Dkt. 2202.

b. **The California Action**

Charges were also brought against Lacey, Carl Ferrer, and James Larkin in California state court. Ferrer is the former CEO of Backpage, and Larkin is a former Backpage executive. (Dkt. 347 at 6). The Complaint describes the same scheme at issue in the Lacey Action: Lacey, Ferrer,

4

and Larkin operated Backpage to collect the earnings of prostitutes and their pimps and actively worked to increase web traffic to Backpage to grow its revenue from the illegal sex trade. Ex. E, *Ferrer* Crim. Compl., Dkt. 347-1 at 148. The charges include conspiracy to commit money laundering, money laundering, conspiracy to commit the crime of pimping, pimping a minor, and pimping. *Id.* at 136-53. Ferrer is scheduled to be sentenced on April 17, 2026. Ex. F, *Ferrer* Case Information, Dkt. 347-1 at 1.

A final judgment has not occurred in criminal cases until after conviction and imposition of sentence. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798 (1989) (citing *Flanagan v. United States,* 465 U.S. 259, 263 (1984)); *United States v. Sosa*, 2023 WL 2139118, at *5 (N.D. Ill. Feb. 21, 2023). There is no dispute that either of the above criminal actions are pending. Lacey is awaiting trial on 84 counts in the Lacey Action, and Ferrer is awaiting sentencing in the Ferrer Action. Some courts have denied stays under § 1595(b)(1) where the moving party failed to present sufficient evidence of any pending criminal investigations. *See, e.g., Doe v. Aylo Glob. Ent. Inc.*, 2023 WL 8884400, at *3 (C.D. Cal. Nov. 29, 2023); *Cortez-Romero v. Marin J Corp*, 2020 WL 3162979, at *1 (S.D. Fla. June 11, 2020). Salesforce provided copies of the underlying indictment and criminal complaint in both Actions, so that concern is not an issue here. Accordingly, the first element is met.

## II. Arising Out of Same Occurrence

Having determined that the Lacey and Ferrer Actions are pending for the purposes of § 1595(b)(1), the Court must decide whether this civil action and those criminal actions arise out of the same occurrence. *Fitzgerald*, 102 F.4th at 1099. This involves determining "whether one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment."

5

*Id*. To do this, the Court must compare Plaintiffs' civil complaints with the Lacey indictment and Ferrer Criminal Complaint. *Id.* at 1100. In the other nearly identical cases against Salesforce, the courts found sufficient similarities between the complaints and the Lacey Action indictment to warrant a stay. *See A.B.*, 2025 WL 3013135 at *3-4; *A.S.*, No. 3:23 C 01039, Dkt. 179 at 7-8; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 7-8. This Court reaches the same conclusion.

Here, Plaintiffs allege that they are victims of a sex-trafficking scheme facilitated and effectuated by Backpage, Salesforce, and their traffickers. *G.G.* Compl. ¶ 70; *A.I.R.* Compl. ¶¶ 27-28, 133-149. The Complaints describe how Backpage knowingly allowed and encouraged advertisements on its website for the sale of sex trafficking victims, including Plaintiffs. *G.G.* Compl. ¶¶ 43-64, 299; *A.I.R.* Compl. ¶¶ 49-69, 133-145. According to the Complaints, Backpage partnered with Salesforce as part of its efforts to grow its business. *G.G.* Compl. ¶ 250; *A.I.R.* Compl. ¶¶ 70-72. Salesforce allegedly provided Backpage with the technology, tools, and support it needed to scale its operations and increase the illegal sex trafficking conducted through its website. *G.G.* Compl. ¶¶ 224, 251; *A.I.R.* Compl. ¶¶ 104, 153. The Complaints further claim that both Backpage and Salesforce profited from Backpage's business. *G.G.* Compl. ¶¶ 48, 63, 75; *A.I.R.* Compl. ¶¶ 57, 119.

The Indictment in the Lacey Action alleges the same core facts about Backpage's sex-trafficking scheme. It asserts that Backpage was aware of the ads for illegal prostitution and sex trafficking on its website and intentionally facilitated that illegal activity through targeted marketing campaigns, strategic partnerships, moderation of advertisements. *Lacey*, No. 2:18 CR 00422, Dkt. 230 at ¶¶ 9-13. According to the Indictment, Backpage derived a majority of its revenue from ads from illegal prostitution and sex trafficking. *Id.* at ¶¶ 1, 15. As the Northern District of Texas correctly concluded, the addition of allegations of Salesforce's involvement does

6

not negate the "core factual overlap" with respect to the overarching illegal scheme. *See A.S.*, No. 3:23 C 01039, Dkt. 179 at 8; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 8.

Both the civil complaints and the Lacey Action Indictment describe a scheme wherein Backpage knowingly posted advertisements for illegal sex trafficking on its website and profited off the revenue from those ads, harming victims of sex trafficking in the process. *See A.B.*, 2025 WL 3013135 at *3 ("The root of the pending criminal action and this case are the same. . ."). Additionally, the civil complaints reference and incorporate facts from the Lacey Action. *See G.G.* Compl. ¶ 44, 71; *A.I.R.* Compl. ¶ 66; *Id.* at 8 n. 5. While not dispositive, this supports the finding that the actions arise out of the same occurrence. *See Fitzgerald*, 102 F.4th at 1100–01 (finding that civil complaint's quotation of and reliance on allegations from criminal indictment established that the two were based, at least in part, on the same occurrences); *A.S.*, No. 3:23 C 01039, Dkt. 179 at 8; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 8.

Analysis from *Does v. Mindgeek USA Incorporated* offers further support for the Court's conclusion. 2021 WL 6618628 at *3-4. In *Mindgeek,* a court in the Central District of California granted a stay in a civil TVPRA case against several corporate defendants that operated pornographic websites. *Id.* at *4. Criminal charges were brought against a defendant who allegedly recorded videos of his girlfriend engaged in sexual acts as a minor and posted the videos to several websites. *Id.* at *1. While the criminal case was pending, the victim sued her ex-boyfriend and the owners of those websites for allegedly profiting from those acts. *Id.* The Court held that the plaintiff's allegations in the civil action arose out of the same occurrence as the allegations in the criminal action against her ex-boyfriend. *Id.* at *4. Similarly, here, there are pending criminal allegations against Lacey for his participation in Backpage's sex-trafficking venture and pending civil allegations against Salesforce for its involvement in the same scheme. Comparing Plaintiffs'

Complaints and the Lacey indictment, the Court concludes that there is "clear connection between the events alleged in the indictment and events at issue" in these cases. *Fitzgerald*, 102 F.4th at 1100.

A comparison of the Ferrer Action to the civil complaints leads to the same conclusion: the actions arise out of the same occurrence. The Criminal Complaint in the Ferrer Action describes how Backpage grew its prostitution business and collected the earnings of adults and minors who were advertised on its website. Ex. E, *Ferrer* Crim. Compl., Dkt. 347-1 at 146-52. This is the same trafficking scheme detailed in the civil complaints: Backpage facilitated sex trafficking by posting advertisements of victims for sale on its website, and it profited from this illicit activity by collecting revenues from those ads. As such, the underlying conduct is the same in the Ferrer Action and these consolidated cases, so the first element is met. *See Doe v. Athens Cnty.*, No. 2:22 C 00855, 2022 WL 1569979, at *1 (S.D. Ohio May 18, 2022) (granting stay where the conduct underlying the civil action and criminal action was the same—the alleged abuse of the plaintiff and subsequent cover-up).

Plaintiffs contend that the term "occurrence" as used in § 1595(b)(1) refers only to one plaintiff's individual instance of trafficking, not a far-reaching scheme that involved the trafficking of many victims. (Dkt. 31 at 4-5). Under this view, Plaintiffs argue that the civil actions cannot have arisen under the same occurrence as the criminal actions because each of their specific trafficking experiences were not described in the criminal cases. (*Id.*). The only legal support Plaintiffs offer in support of their argument is a Fifth Circuit case involving the Class Action Fairness Act where the Court defines "occurrence." *See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 (5th Cir. 2014). Moreover, Plaintiffs do not limit the allegations in their civil complaints to their individual experiences; they describe, in detail, how

8

Backpage perpetrated a wide-ranging and far-reaching sex-trafficking scheme that victimized individuals across the nation. *G.G.* Compl. ¶¶ 43-64; *A.I.R.* Compl. ¶¶ 49-69. Without any precedent to the contrary, the Court finds that a scheme or systematic practice that victimizes multiple individuals, such as the one facilitated by Backpage, constitutes an "occurrence" under § 1595(b)(1). *See Bradberry v. Abercrombie & Fitch Co.*, 2024 WL 4604508, at *2 (S.D.N.Y. Oct. 29, 2024) (granting stay under § 1595(b)(1) where civil and criminal actions alleged that defendants operated an international sex trafficking and prostitution business that victimized many young men over seven years).

Plaintiffs also argue that the second element of the *Fitzgerald* test cannot be met because the defendants in the criminal actions and the civil actions are not the same, and no defendants in the criminal actions were charged with violating the criminal provisions of the TVPRA. (Dkt. 248 at 8); (Dkt. 311 at 7). Courts in the identical Texas cases rejected these arguments, and this Court sees no reason conclude otherwise. *See A.B.*, 2025 WL 3013135 at *4; *A.S.*, No. 3:23 C 01039, Dkt. 179 at 8; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 8. There is no requirement under § 1595(b)(1) that the defendant in the civil action is a named defendant in the related, pending criminal action. *See, e.g.*, *Fitzgerald*, 102 F.4th at 1098-99; *Mindgeek*, 2021 WL 6618628 at *3; *Sharma*, 2021 WL 4865281, at *2; *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 550 (S.D.N.Y. 2012). Further, Plaintiffs do not offer any case law, and the Court is not aware of any, where a court denied a stay on the grounds that the criminal defendants were not charged under the TVPRA. *But see Mindgeek*, 2021 WL 6618628 at *4 (civil TVPRA case stayed where defendant in criminal case was charged with child pornography-related charges); *Athens Cnty.*, 2022 WL 1569979, at *1 (same where defendant in criminal case was charged with "Gross Sexual Imposition" under state law).

9

Accordingly, the Lacey and Ferrer Actions "arise out of the same occurrence" as these consolidated cases for the purposes of § 1595(b)(1).

### III. Victims of Same Occurrence

Finally, the Court must consider whether Plaintiffs in these consolidated cases are the victims of the same occurrence alleged in the Lacey and Ferrer Actions. Section 1595(b)(1) requires that "the claimant is the victim" in the pending criminal action. 18 U.S.C. § 1595(b)(1); *Fitzgerald*, 102 F.4th at 1101. Plaintiffs argue that they cannot be considered victims of the Lacey Action or Ferrer Action because they are not specifically referenced anywhere in those criminal proceedings. (Dkt. 311 at 6-7).

The Northern District of Texas explicitly rejected Plaintiffs' argument when it granted stays in two identical cases against Salesforce, holding that "[the TVPRA] does not require that the victim is specifically named or identified in the criminal indictment." *A.S.*, No. 3:23 C 01039, Dkt. 179 at 9; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 9. The Court relied on *Florida Abolitionist, Inc. et al. v. Backpage.com LLC et al.*, a similar case where the plaintiffs alleged that Backpage, Ferrer, and others assisted, supported, and facilitated their trafficking. No. 6:17 C 00218, Dkt. 159 at 1. (M.D. Fla. Dec. 6, 2017). There, the Court held that, based on the allegations in the complaint and the criminal charges against Backpage and Ferrer in Arizona, California, and Texas, the mandatory stay under § 1595(b)(1) applied. *Id.* at 3-4. It recognized that, even though no plaintiff was alleged to be a victim in the criminal cases, allegations "involving sweeping, systematic practices that allegedly harmed many victims in the same fashion" create a unique situation. *Id.* at 3. Likewise, the Court in *Bradberry* held that the third element of the *Fitzgerald* test was met even though the plaintiff was not identified as one of the 15 victims in the pending criminal action. 2024 WL 4604508 at *3. That case similarly involved an alleged sweeping sex trafficking scheme that

10

impacted many victims nationwide. *Id.* at *2-3. These cases suggest that a plaintiff does not have to be named in a criminal action to be considered one of the victims of the alleged criminal conduct.

In the Lacey Action, the Indictment includes 17 "select victim summaries" detailing the experiences of unnamed victims who were sold for sex through the use of Backpage ads. *Lacey*, No. 2:18 CR 00422, Dkt. 230 at ¶¶ 160-176. Count One of the Indictment, which charges the defendants with conspiracy to facilitate prostitution, incorporates all preceding factual allegations, including the victim summaries. *Id.* at ¶ 195. It does not specifically reference any other victims of the charge. The Court agrees with the Northern District of Texas that Plaintiffs are victims of Count One because the phrase "select victim summaries," together with the facts describing a nationwide scheme, suggests that the 17 referenced victims are some, but not all, of the victims impacted by Backpage's conduct. *A.S.*, No. 3:23 C 01039, Dkt. 179 at 9; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 9. This aligns with the approach taken in *Bradberry*, where the court held that the plaintiff was a victim of the pending criminal action even though he was not named as one because the because the list of victims in the indictment made clear it was not exhaustive. 2024 WL 4604508 at *3.

Plaintiffs attempt to claim that they are not the victims in the Lacey and Ferrer Actions to avoid stays, but this is directly contradicted by their own allegations in the Complaints. In the Complaints, Plaintiffs allege that they were advertised for sale on Backpage, and their traffickers paid Backpage to post these ads. *G.G.* Compl. ¶¶ 229, 237; *A.I.R.* Compl. ¶¶ 133-49. This is the exact scheme underlying Count One of the Lacey Action: Backpage knowingly posted advertisements for the sale of sex trafficking victims throughout the country and profited from those ads. *Lacey*, No. 2:18 CR 00422, Dkt. 230 at ¶¶ 9-13. Further, the Complaints explicitly allege that Plaintiffs were victims of Backpage's sex-trafficking scheme. *G.G.* Compl. at 104 ("Plaintiff

11

is One of Many Victims of the Salesforce/Backpage Enterprise"); *A.I.R.* Compl. ¶ 151 ("Plaintiffs were and are a victim within the meaning of 18 U.S.C. § 1595(a) because both Backpage and Plaintiffs' street-level traffickers committed violations of 18 U.S.C. § 1591 against Plaintiffs").

In comparison, Counts 2 through 51 of the Lacey Action Indictment, which charge the defendants with facilitating prostitution, specifically reference individual victims. *Lacey*, No. 2:18 CR 00422, Dkt. 230 at ¶ 201. Similarly, each charge against the defendants in the Ferrer Action for pimping and conspiracy to commit pimping lists specific victims. Ex. E, *Ferrer* Crim. Compl., Dkt. 347-1 at 146-52. There is no explicit or implicit suggestion that there may be other victims of these charges. Thus, the Court has no basis to conclude that Plaintiffs are victims of this conduct. Salesforce argues that Plaintiffs can still be considered victims of these charges because they are victims of the overall trafficking scheme that is the subject of the Lacey and Ferrer Actions. (Dkt. 254 at 11); (Dkt. 347 at 13-14). Section 1595(b)(1) does not, however, "generalize to the scheme." *A.S.*, No. 3:23 C 01039, Dkt. 179 at 9; *S.M.A.*, No. 3:23 C 00915, Dkt. 105 at 9. Plaintiffs must be one of *the* victims of the charges. *Id.* Accordingly, Plaintiffs are not the victims of the Ferrer Action or of Counts 2 through 51 of the Lacey Action. Even so, because Plaintiffs are among the victims of Count One of the Lacey Action, the third element is satisfied with respect to that pending criminal proceeding.

**IV. Other Arguments**

Plaintiffs make two final arguments in an attempt to avoid mandatory stays. First, they argue that stays are not warranted here because, unlike *Fitzgerald*, the government did not intervene to ask for them. *See Fitzgerald*, F.4th at 1094. Yet, courts have granted stays sought by civil defendants with no government intervention. *See generally A.B.*, 2025 WL 3013135; *A.S.*, No. 3:23 C 01039, Dkt. 179; *S.M.A.*, No. 3:23 C 00915, Dkt. 105; *Bradberry*, 2024 WL 4604508;

12

*Sharma*, 2021 WL 4865281; *Lunkes*, 882 F.Supp.2d; *Mindgeek*, 2021 WL 6618628; *Athens Cnty*, 2022 WL 1563379. Accordingly, the Court declines to read such a requirement into § 1595(b)(1).

Next, Plaintiffs argue that denying stays here is more aligned with Congress's intent in passing § 1595(b)(1). (Dkt. 311 at 4, 9). The Court recognizes the important policies behind the mandatory stay provision—Congress wanted to protect the Department of Justice's ability to try criminal cases "unfettered by the complications of civil discovery" and not to help defendants delay civil actions. *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014); *Lunkes*, 882 F. Supp. 2d at 549. Nonetheless, the statute does not grant the Court any discretion to deny a stay on policy justifications when all elements of the provision are met. *Fitzgerald*, 102 F.4th at 1099 (when all three requirements of § 1595(b)(1) are met, issuing a stay is mandatory).

All three elements of § 1595(b)(1) are met with respect to the Lacey Action: the criminal action is pending, it arises out of the same occurrence as these consolidated cases, and Plaintiffs are among the victims of one of the charges. Accordingly, the Court must impose a stay in these civil proceedings until Count One of the Lacey Action reaches final adjudication. Because the Court is required to order a stay under § 1595(b)(1), it need not consider Salesforce's arguments with respect to 18 U.S.C. § 3509(k).

**CONCLUSION**

For the forgoing reasons, the Court grants Salesforce's Motions to Stay [254], [347]. These consolidated cases are stayed pending resolution of Count One in *United States v. Lacey*, No. 2:18 CR 00422 (D. Ariz.). The parties shall file a joint status report with this Court within fourteen days of the final adjudication of this Count. All other pending motions are stricken without prejudice and may be refiled when the stay is lifted.

_____
Virginia M. Kendall
United States District Judge

Date: March 10, 2026